Eddie CARDINE; and Michael
Curry, Appellants,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 2006–SC–000677–MR,
2006–SC–000680–MR.

Supreme Court of Kentucky.

Jan. 22, 2009.

Rehearing Denied June 25, 2009.

Rebecca Lynn Hobbs, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant, Eddie Cardine.

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant, Michael Curry.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

When Appellants Eddie Cardine and Michael Curry first went to trial, the trial court declared a mistrial soon after the

jury was sworn. After a second joint jury trial, the Appellants were both found guilty of murder, attempted murder, and assault in the second degree, and were sentenced to thirty years' imprisonment. On appeal, both Appellants raise a number of issues, though only one need be addressed. Because the second jury trial in this case violated the Fifth Amendment's proscription against double jeopardy, Appellants' convictions are reversed.

## I. Background

Appellants Cardine and Curry were both indicted on June 22, 2004 in a five-count indictment charging them with complicity to murder, two counts of complicity to attempted murder, complicity to assault in the first degree, and complicity to assault in the second degree.

After a previous confrontation between the Appellants and Deonte Neal, Tyson Gibbs, Otha Burney, and Dejuan Smith, the Appellants picked up a third person and met the other group for a second time. It was at this second meeting that a gunfight ensued, resulting in the death of Gibbs and injury of Neal and Burney, allegedly from shots fired by the Appellants.

As became apparent from the testimony at the second trial, it was undisputed that Cardine fired a gun. Curry, however, disputed having a gun, which would have been an issue at the first trial.

At the first jury trial, both parties made numerous pretrial motions before and after the jury was selected and sworn. The last matter brought to the court's attention by the Commonwealth was a newly discovered witness, a man who claimed Curry tried to sell a gun to him on the day of the shooting. Even though the Commonwealth conceded that it had other witnesses that would testify that Curry had a gun on the day of the shooting, it argued that this new witness was more disinterested than the others (despite the fact that he was discovered by the mother of one of the victims). Defense counsel objected that this witness's testimony was evidence of other bad acts under KRE 404(b) and should be excluded because the KRE 404(c) notice requirements were not met. As both sides made their arguments about this witness's admissibility to the judge, he was located, brought in the courtroom, and sworn to reappear. The witness then left the courtroom and the court took a break for lunch. After lunch, the parties argued over whether the new witness should be allowed to testify.

Each Appellant's defense counsel moved to exclude the new witness, or in the alternative, for a continuance. The Commonwealth claimed the witness was crucial. It should be noted that the Commonwealth's description of the testimony given by this "crucial witness" at the eventual second jury trial is limited to one sentence in its brief. The Commonwealth argued in favor of allowing the new witness to testify and stated that it preferred a continuance to exclusion.

The trial judge denied defense counsels' motions to exclude the witness. Immediately thereafter, the trial judge determined that the witness was an important factor in obtaining a fair trial and *sua sponte* declared a mistrial "pursuant to manifest necessity." Neither the defense nor the Commonwealth objected.

After the second jury trial in this case, Appellants were both convicted and sentenced to thirty years in prison. Their appeals to this Court, therefore, are a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Cardine and Double Jeopardy

Appellant Cardine's first claim of error is that the second trial violated his double jeopardy rights under Section 13 of the

Kentucky Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. For the reasons discussed herein, this Court agrees.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; *see also* Ky. Const. § 13 ("No person shall, for the same offense, be twice put in jeopardy . . . ."). The Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Further, the Fifth Amendment and Section 13 of the Kentucky Constitution are "identical in the import of their prohibition against double jeopardy." *Jordan v. Commonwealth,* 703 S.W.2d 870, 872 (Ky.1985).

■ There is some confusion under Kentucky law about when jeopardy attaches. The current federal rule is clear: in jury trials, jeopardy attaches when the jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Before the enactment of the Kentucky Penal Code, the rule for attachment of double jeopardy was the same as the current federal rule. *Baker v. Commonwealth,* 280 Ky. 165, 132 S.W.2d 766, 767 (1939) ("[J]eopardy attaches when the jury is impaneled and sworn."). However, in 1975, the General Assembly enacted KRS 505.030(4), which states that jeopardy attaches "after the first witness [i]s sworn . . . ."

According to the official commentary to the Penal Code, the drafters intentionally changed the point at which jeopardy attaches to make it the same in both bench and jury trials. The official commentary to KRS 505.030(4) provides,

The provision provided in subsection (4) is a codification of prior law, except for a slight change in the point at which jeopardy attaches. Previously, in a jury case, jeopardy attached when the jury was impaneled and sworn. The change that is made by subsection (4) serves only to create the same rule for jury and nonjury trials.

KRS 505.030(4) cmt. (citation omitted).

■ This Court heard a challenge to the constitutionality of KRS 505.030(4) soon after its enactment. *See Graham v. Commonwealth,* 562 S.W.2d 625, 626 (Ky.1978). In *Graham,* this Court noted that the U.S. Supreme Court had recently granted a writ of certiorari to the Ninth Circuit regarding its decision in *Bretz v. Crist,* 546 F.2d 1336 (9th Cir.1976), a case that expressly addressed the issue of when jeopardy attaches in a jury trial. The Ninth Circuit had recently ruled as a matter of constitutional law that jeopardy attached in a jury trial when the jury was sworn. *Id.* at 1343. Rather than waiting for the U.S. Supreme Court to rule on the issue, this Court issued its opinion in *Graham,* rejecting the approach employed by the Ninth Circuit and upholding the constitutionality of KRS 505.030(4). *Graham,* 562 S.W.2d at 627. This Court acknowledged that the new statute was subject to further challenge if the United States Supreme Court held that such a double jeopardy attachment rule did not comport with the U.S. Constitution. *Id.* at 627 ("If the U.S. Supreme Court holds otherwise as a matter of federal constitutional law we will, of course, respectfully conform to its decision . . . .")

The U.S. Supreme Court issued its opinion in *Crist* four months later. The Court, in analyzing the Montana statute at issue, framed the issue as "whether the federal rule governing the time when jeopardy attaches in a jury trial is binding on Mon-

tana through the Fourteenth Amendment. The federal rule is that jeopardy attaches when the jury is empaneled and sworn; a Montana statute provides that jeopardy does not attach until the first witness is sworn." *Crist*, 437 U.S. at 29, 98 S.Ct. 2156.

As an initial matter, the U.S. Supreme Court noted:

> The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury.... It is an interest with roots deep in the historic development of trial by jury in the Anglo–American system of criminal justice. Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.

*Id.* at 35–36, 98 S.Ct. 2156 (footnotes omitted). Applying this rationale to the statute at issue in *Crist*—a statute with a double jeopardy attachment provision identical to Kentucky's statute—the U.S. Supreme Court concluded that

> the federal rule as to when jeopardy attaches in a jury trial is not only a settled part of federal constitutional law. It is a rule that reflects and protects the defendant's interest in retaining a chosen jury. We cannot hold that this rule, so grounded, is only at the periphery of double jeopardy concerns. Those concerns—the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury—have combined to produce the federal law that in a jury trial jeopardy attached when the jury is empaneled and sworn.... [Therefore,] the time when jeopardy attaches in a jury trial "serves as the lynchpin for all double jeopardy jurisprudence."

*Id.* at 37–38, 98 S.Ct. 2156 (quoting *Bretz*, 546 F.2d at 1343). Thus, under the Double Jeopardy Clause, as applied to the states through the Fourteenth Amendment, the U.S. Supreme Court explicitly held that "[t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy" and it is binding on the states. *Id.* at 38, 98 S.Ct. 2156. Thus, "Montana's view as to when jeopardy attaches is impermissible under the Fourteenth Amendment...." *Id.* at 37, 98 S.Ct. 2156.

Therefore, statutes like Kentucky's that fix the point for attachment of jeopardy in jury trials as the swearing of the first witness are unconstitutional. KRS 505.030(4), enacted before the U.S. Supreme Court's decision in *Crist*, is in direct conflict with its interpretation of the federal double jeopardy clause. Unfortunately, despite the promise in *Graham* that the issue could be raised again, Kentucky's statute fixing jeopardy attachment at the swearing of the first witness has remained untouched for over thirty years. *E.g.*, *Graham*, 562 S.W.2d at 627; *Allen v. Walter*, 534 S.W.2d 453, 455 (Ky.1976); *Radford v. Lovelace*, 212 S.W.3d 72, 79 (Ky. 2006); *Commonwealth v. Lewis*, 548 S.W.2d 509, 510, n. 2 (Ky.1977). Even though several of our cases have cited *Crist* for the rule that jeopardy attaches in a jury trial when the jury is sworn, none have directly addressed its impact on KRS 505.030(4). *E.g.*, *Couch v. Maricle*, 998 S.W.2d 469, 470 (Ky.1999); *Commonwealth v. Lamberson*, 201 S.W.3d 497, 499 (Ky.App.2006).

■ The direct conflict between the statute and the federal constitution is at issue in this case because the jury, but no witnesses, had been sworn in the first trial. Jeopardy had not attached under KRS 505.030(4), but it did attach under *Crist*.

Therefore, this case requires us to definitively resolve this area of confusion in Kentucky law. Ultimately, the United States Supreme Court's interpretation of the federal constitution, as the supreme law of the land, trumps any competing interpretation by this Court and any inconsistent statute passed by this Commonwealth's General Assembly. Thus, to the extent that KRS 505.030(4) and the cases interpreting it guarantee anything less than the federal standard for attachment of double jeopardy, they are overruled.

In the present case, the jury was sworn and jeopardy therefore attached on October 25, 2005, the day before the discovery of the new witness.

▮ Attachment of jeopardy alone, however, does not resolve this case. While the protection afforded by the Double Jeopardy Clause is extraordinary, it is not without exception. "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury or contemporaneously-impaneled alternates is barred unless 1) there is a 'manifest necessity' for a mistrial or 2) the defendant either requests or consents to a mistrial." *Ray*, 982 S.W.2d at 673; *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) ("Since Mr. Justice Story's 1824 opinion for the Court in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, this Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether 'there is a manifest necessity for the (mistrial), or the ends of public justice would otherwise be defeated.'" (quoting *Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973))). As discussed below, in this case, there was no basis for the trial court's finding of a manifest necessity and the Appellants' attorneys neither requested nor consented to a mistrial.

▮ Broadly speaking, "[w]hether to grant a mistrial is within the sound discretion of the trial court, and 'such a ruling will not be disturbed absent ... an abuse of that discretion.'" *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky.2005) (quoting *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky.2004)). However, "[a] mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Id.* "[T]he trial judge, in making a mistrial decision, must use 'sound discretion' in declaring a mistrial because a constitutionally protected interest is inevitably affected." *Radford*, 212 S.W.3d at 79 (Ky.2006) (quoting *Grimes v. McAnulty*, 957 S.W.2d 223, 225 (Ky.1997)). And "[a]lthough a trial court is vested with discretion on granting a mistrial, the power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky.2000) (citing *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991)). Simply put, "[t]he error must be 'of such character and magnitude that a litigant will be denied a fair and impartial trial and *the prejudicial effect can be removed in no other way* [except by grant of a mistrial].'" *Bray*, 177 S.W.3d at 752 (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky.1996)) (emphasis added).

▮ "[W]hen a mistrial is declared at the behest of the prosecutor or *on the court's own motion*, ... the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him, [is balanced] against the public interest in insuring that justice is meted out to offenders." *Malinovsky v.*

*Court of Common Pleas of Lorain County,* 7 F.3d 1263, 1270–71 (6th Cir.1993) (internal quotation marks and citations omitted). When the trial court *sua sponte* declares a mistrial, "the Double Jeopardy Clause is not offended and a retrial is not prohibited if there existed a *manifest necessity* for declaring a mistrial." *Id.* at 1270; *see also Arizona v. Washington,* 434 U.S. 497, 505–06, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Glover,* 950 F.2d at 1242; *United States v. White,* 914 F.2d 747, 754 (6th Cir.1990); *Hamm v. Jabe,* 706 F.2d 765, 767 (6th Cir.1983); *United States v. Bridewell,* 664 F.2d 1050, 1051 (6th Cir.1981). Thus, if there was not a manifest necessity in this case, double jeopardy barred the second trial of Cardine.

■ A manifest necessity is an " 'urgent or real necessity' " that is "determined on a case by case basis." *Scott,* 12 S.W.3d at 684 (quoting *Miller v. Commonwealth,* 925 S.W.2d 449, 453 (Ky.1996)). A hung jury is a classic example of a manifest necessity requiring a mistrial. *Id.; see also Grimes v. McAnulty,* 957 S.W.2d 223, 224 (Ky.1997) (manifest necessity for a mistrial "found to exist when the defendant introduces improper evidence which prejudices the Commonwealth's right to a fair trial").

However, "[i]n some cases the declaration of a mistrial by a presiding judge when there was no manifest necessity to do so will prevent retrial.' " *Radford,* 212 S.W.3d at 79 (quoting *Nichols v. Commonwealth,* 657 S.W.2d 932, 933 (Ky.1983)); *see also Macklin v. Ryan,* 672 S.W.2d 60 (Ky.1984) (no manifest necessity for a mistrial where "juror who knew the mother of the co-defendant stated that she did not discuss the matter with the other jurors"); *Scott,* 12 S.W.3d at 683, 685 (no manifest necessity for mistrial where prosecutor almost handed loaded BB gun to juror, juror pointed out to prosecutor that he "know[s] enough about guns to check it and make sure it's empty before you start passing them around" and Commonwealth objected that the juror was hostile); *Leibson v. Taylor,* 721 S.W.2d 690, 693 (Ky.1986), *overruled on other grounds by Shaffer v. Morgan,* 815 S.W.2d 402 (Ky.1991) (no manifest necessity for a mistrial where defendant improperly influenced brother's refusal to testify at his trial when brother has constitutional right to refuse to testify by asserting privilege against self-incrimination); *Miller v. Commonwealth,* 925 S.W.2d 449, 453 (Ky.1996), *overruled on other grounds by Garrett v. Commonwealth,* 48 S.W.3d 6 (Ky.2001) (no manifest necessity for a mistrial where child victim in sexual abuse and kidnapping case broke into tears on witness stand, had to leave courtroom, and those in courtroom could still hear her exclaiming "I don't want to. I don't want to." before returning to the stand). Therefore, when determining whether the trial court abused its discretion in declaring a mistrial, "it is necessary to examine whether there was manifest necessity to do so, since a mistrial—where no manifest necessity exists—triggers a person's constitutional protection against double jeopardy." *Radford,* 212 S.W.3d at 80. As in *Radford,* whether the trial court abused its discretion is the core issue in this case.

■ "When deciding whether there is manifest necessity to declare a mistrial, we must look to see if either parties' right to a fair trial has been infringed upon." *Id.* To do this, "the court must always assess if the parties' 'interest in seeing the first trial through to a verdict [is] outweighed by competing and equally legitimate demand for [protection of the parties' rights and] public justice.' " *Id.* (quoting *Scott,* 12 S.W.3d at 685). Specifically, "the decision should be based on whether the complained of 'event ... prevented the [party]

from receiving a fundamentally fair trial.' " *Id.* (quoting *Scott,* 12 S.W.3d at 685).

■ In this case, on the morning of trial and after a jury had been selected and sworn, the Commonwealth disclosed to the court and opposing counsel that it had a newly discovered witness—a man who it knew only as "Rob" and to whom it had never spoken—who would testify that Curry tried to sell him a gun on the day of the shooting. However, in addition to Cardine pointing the finger at Curry, the Commonwealth already had two witnesses who planned to testify (and who did so at the second jury trial in this case) that they had made earlier statements to police that Curry shot at them.

The Commonwealth had nearly sixteen months to prepare its case after the court ordered discovery until the jury was sworn on October 25, 2005. When the Commonwealth showed up on October 25 and picked a jury, it was ready to present its case with the evidence it had. By proceeding and completing jury selection, the Commonwealth tacitly acknowledged that it had enough evidence to proceed to trial. Therefore, the witness, whom neither side knew about before the jury was sworn, could not have been essential and had to be cumulative. Otherwise, the Commonwealth would have asked for a continuance before the jury was selected and sworn. Cardine's appellate counsel correctly argues that the Commonwealth's need to put on this newly discovered witness paled in comparison to a defendant's "valued right to have his trial completed by a particular tribunal," which is the "right that lies at the foundation of the federal rule that

jeopardy attaches when the jury is empaneled and sworn." *Crist,* 437 U.S. at 36, 98 S.Ct. 2156 (internal quotation marks omitted).

Thus, the Commonwealth's argument against double jeopardy is based on a claim that this witness was essential. Defense counsel, however, argued that the witness was merely an attempt to get in testimony about prior bad acts under KRE 404(b) without complying with KRE 404(c)'s notice requirements.[1] Under KRE 404(c) if the Commonwealth fails to provide the required notice, the trial judge has only the option to exclude the evidence or grant a continuance. Assuming 404(b) applies, the trial court's decision to grant a mistrial on its own motion was not a manifest necessity, because both exclusion and a continuance were possible alternative remedies. Even if it does not, those remedies are far less invasive to the Appellant's double jeopardy rights than granting a mistrial, and the trial court was mandated to use these remedies unless there was a manifest necessity to declare a mistrial.

■ Also, Appellant argued as grounds for exclusion or a continuance that Criminal Rules 7.24 and 7.26 were violated by the late disclosure of this witness. Despite Appellant's claim, however, these rules do not require disclosure of prosecutorial witnesses.[2] Actually, the fact that these rules were not violated cuts against the need for a mistrial since no remedy, much less one as extreme as a mistrial, was required under these Criminal Rules absent a discovery violation.

---

1. KRE 404(c) requires "reasonable pretrial notice to the defendant of [the prosecution's] intention to offer such evidence." If the prosecution fails to provide the required notice, the court may either exclude the evidence or "for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure."

2. In addition, neither the local rules of the Jefferson Circuit Court nor the trial judge's discovery order required disclosure.

Even if this newly discovered witness was material, there would still not be a basis for a mistrial based on manifest necessity. In *Downum v. United States*, 372 U.S. 734, 735–38, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), a sworn jury was discharged after the prosecutor failed to assure the presence of a witness that was "essential" for two of the six counts against the defendant. The U.S. Supreme Court found that the witness would have only strengthened the case against the defendant and it held there was not a manifest necessity for a mistrial; thus a retrial was prohibited. *Id.* at 737–38, 83 S.Ct. 1033; *see also* 8 Leslie W. Abramson, *Kentucky Practice: Criminal Practice and Procedure* § 14:10 (4th ed.2003) (retrial prohibited where "mistrial allows prosecutor to strengthen case against defendant"). This case is on all fours with the present case, applies federal double jeopardy rules, and is binding on this Court.

In *Mizell v. Attorney General of State of New York*, 586 F.2d 942 (2d Cir.1978), two witnesses for the prosecution did not show up for the beginning of a trial, even though it was likely at least one of them would be able to make it by the following Monday. On Thursday, the prosecutor asked for a continuance until the following Monday, but the trial judge discharged the jury instead. The Second Circuit Court of Appeals held that "[u]nder these circumstances neither the 'ends of public justice' nor 'manifest necessity' required a mistrial. A continuance should have been granted." *Id.* at 947. In much the same way that the trial court in this case considered its crowded calendar, in *Mizell*, "[t]he only reason given by the court for the failure to grant a continuance was the convenience of the jury." *Id.* The court's reasoning that another case was scheduled to begin the next day, while a very real problem for the trial court, cannot supersede this Appellant's double jeopardy rights, and does not create a manifest necessity for a mistrial.

As in *Radford*, the Commonwealth in this case did not make a motion for a mistrial but the trial court nonetheless declared one on its own motion after jeopardy had attached. *Radford*, 212 S.W.3d at 83. The facts of *Radford* dealt with uncoercive contact between the defendant's relative and witnesses in the case, and this Court held that double jeopardy barred a retrial because such uncoercive contact did not rise to the level of manifest necessity required for a mistrial. *Id.*

Similar to *Radford*, a trial court's *sua sponte* declaration of a mistrial pursuant to manifest necessity is unnecessary when the Commonwealth offers late-discovered cumulative evidence. In this case, the relative weight of the Commonwealth's late-discovered witness merited only his exclusion or a continuance.

Instead of granting a continuance, the trial court informed the parties that it had another upcoming lengthy criminal trial and that its next available trial date was months down the road. However, this alone should have given the court pause about declaring a mistrial, because the delay in getting another date only underscores the Appellant's right to be tried by the jury he had. It was within the trial court's discretion to exclude this witness without undue prejudice to the Commonwealth if it did not want to grant a continuance. Having these viable options precludes a finding of manifest necessity, and it was thus an abuse of discretion to grant the mistrial.

### B. Curry

 Curry has not raised the double jeopardy issue in his brief, even though he was tried with Cardine and his counsel lodged the same objections to the new witness at trial. Therefore, any double jeopardy error in his conviction must be addressed under the palpable error rule,

which states that "[a] palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, *even though insufficiently raised* or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26 (emphasis added). As this Court has repeatedly held, double jeopardy claims fall under the palpable error rule because this Court "do[es] not want to let stand a conviction possibly tainted by double jeopardy." *Terry v. Commonwealth*, 253 S.W.3d 466, 470 (Ky.2007); *see also Brooks v. Commonwealth*, 217 S.W.3d 219, 222 (Ky.2007). This is basic palpable error review, where an unpreserved error requires reversal "if a manifest injustice has resulted from the error," which means there "is [a] probability of a different result or [the] error [is] so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). Clearly, allowing this case to proceed to trial a second time caused a completely different outcome: conviction instead of release. Thus, the double jeopardy analysis above applies equally to Appellant Curry, making his conviction equally in violation of his constitutional rights.

## C. Waiver and Preservation of Error

In response to Cardine's brief, the Commonwealth argues that the double jeopardy violation was somehow waived or otherwise not preserved for appeal because the Appellants got what they requested (albeit in the form of a mistrial), did not object to the mistrial, and did not raise the issue when the trial court was setting a date for the second trial. Because these arguments are also applicable to Curry, they are addressed as to both Appellants.

First, neither Appellant asked for a mistrial.[3] Appellants requested the alternative relief described above: exclusion of the new witness or continuance to another date. A mistrial is not a substitute for a continuance, which the Commonwealth seems to imply, because it excuses the current jury from the case, whereas a continuance postpones the trial but keeps the same jury. Thus, for double jeopardy purposes, only the latter remedy is workable, since only it preserves the "valued right to have [a] trial completed by a particular tribunal," which is the "right that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn." *Crist*, 437 U.S. at 36, 98 S.Ct. 2156 (internal quotation marks omitted).

Second, the defense does not have to object to a mistrial. In *Radford*, retrial of the defendant was barred on double jeopardy grounds even though the defendant did not object to the trial court's declaration of a mistrial. *Radford*, 212 S.W.3d at 83; *see also United States v. Gantley*, 172 F.3d 422, 429 (6th Cir.1999) ("[A] defendant's failure to object to a mistrial implies consent thereto only if the sum of the surrounding circumstances *positively indicates* this silence was tantamount to consent." (emphasis added)). In *Radford*, this Court noted that "[a]ccording to the record, the first mention by the trial court of a mistrial was from the bench when the trial court dismissed the jury. Therefore, there is no argument that the Appellant consented to the mistrial be-

---

**3.** If Appellants had asked for a mistrial, they could have waived their Double Jeopardy claim. *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) ("[I]n the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."). *See also Derry v. Commonwealth*, 274 S.W.3d 439 (Ky.2008).

cause the record does not provide any evidence that a mistrial was even discussed, or moved for by the Commonwealth, before the trial court dismissed the jury." *Radford*, 212 S.W.3d at 76–77. This Court also noted,

> Furthermore, RCr 9.22 states that if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice that party. This rule is almost identical to Federal Rule of Criminal Procedure 51(b), which provides, in part, that if a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party. Therefore, when "the very first time there was mention of [a mistrial was] when the court [declared a mistrial,] [i]t was clear ... that the time for argument was over [and the Appellant] simply could not [have] waive[d][his] opportunity to object when [he] was never given such an opportunity."

*Id.* at 77 (quoting *United States v. Breeding*, 109 F.3d 308, 310 (6th Cir.1997)) (alterations in original). Since the Appellants in this case also failed to object to the trial court's abrupt *sua sponte* declaration of a mistrial, *Radford* controls. Therefore, as in *Radford*, the Appellants in this case did not consent to the trial court's declaration of a mistrial, nor were they required to object.

Additionally, it simply does not make sense to require a criminal defendant to object to a mistrial. If the trial judge improperly grants a mistrial, as in this case, such a rule would require the defense attorney to risk forgoing a win for his client if the objection was sustained. Forcing the defense to risk snatching defeat from certain victory is impermissible in light of the adversarial nature of our justice system and the ethical requirements of zealous, competent advocacy. This notion is buttressed by the fact that the burden of proof is on the Commonwealth. KRS 500.070(1); *Brock v. Commonwealth*, 947 S.W.2d 24, 26 (Ky.1997). It is the Commonwealth whose interests are harmed by an improper, *sua sponte* mistrial. When the trial court ordered, *sua sponte*, a mistrial after the jury was sworn under an erroneous finding of manifest necessity, the Commonwealth could have objected to provide the court with a chance to correct its error and to allow the Commonwealth a chance to later prove its case. No such objection was made by the Commonwealth.

■ Third, even though neither Appellant raised the issue of double jeopardy at the time of their retrial, as noted above double jeopardy violations can be addressed as palpable error because the nature of such errors is to create manifest injustice. Presentation of such errors to the trial court, while perhaps preferable, is not required. In *Sherley v. Commonwealth*, 558 S.W.2d 615, 618 (Ky.1977), *overruled on other grounds by Dixon v. Commonwealth*, 263 S.W.3d 583 (Ky.2008), this Court heard a double jeopardy claim even though it was not raised at trial. Even though the defendant "did not present th[e] issue of double jeopardy or multiple prosecution to the trial court ... [this Court was] persuaded that failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand." *Id.* This principle has been repeatedly affirmed: "[U]nder our longstanding rule, double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court." *Terry*, 253 S.W.3d at 470; *Beaty v. Commonwealth*, 125 S.W.3d 196, 210 (Ky.2003); *Grundy v. Commonwealth*, 25 S.W.3d 76, 85 (Ky.2000); *Butts v. Commonwealth*, 953 S.W.2d 943, 945 (Ky.1997); *Gunter v. Commonwealth*, 576 S.W.2d 518, 522 (Ky.1978); *see also Menna v. New*

*York,* 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (double jeopardy claim on appeal not waived by defendant's guilty plea). This Court "remain[s] committed ... to our procedural holding in *Sherley* that failure to preserve double jeopardy issues 'should not result in permitting a double jeopardy conviction to stand.'" *Dixon,* 263 S.W.3d at 593 n. 50, (quoting *Sherley,* 558 S.W.2d at 618).

Ultimately, because the Appellants did not request or cause the mistrial, their double jeopardy rights remained intact. They requested appropriate relief when they sought exclusion or a continuance. The fact that the trial court *sua sponte* and unnecessarily declared a mistrial cannot prejudice or extinguish their double jeopardy rights. Thus, the Appellants adequately preserved the issue by their alternative motions for exclusion or a continuance, and they were not required to object to the declaration of a mistrial.

### III. Conclusion

In conclusion, jeopardy attached before the trial court abused its discretion in finding a manifest necessity and *sua sponte* declaring a mistrial at the first jury trial of Cardine and Curry. Therefore, their second jury trial violated Section 13 of the Kentucky Constitution and the Double Jeopardy Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment. For that reason, their convictions and the judgments of the Jefferson Circuit Court are reversed, and these actions shall be dismissed.

MINTON, C.J.; SCHRODER and VENTERS, JJ., join. CUNNINGHAM, J., dissents by separate opinion with SCOTT, J., joining. ABRAMSON, J., not sitting.

Dissenting Opinion by Justice CUNNINGHAM.

I respectfully dissent from the well-written opinion of Justice Noble.

By the entering of the mistrial, Appellants received the continuance each requested. The trial court was faced with the option of not allowing the Commonwealth to call a last minute witness or the option of granting a continuance. The Commonwealth insisted that the newly discovered witness was critical because he was a disinterested third party and the only person, other than the victims of the shooting, who could put a gun in the hands of Curry. The Commonwealth argued that the witness was crucial and the ends of justice required that he be allowed to testify. According to the brief of Appellant, Cardine, even the trial court thought the witness was important to both the defense and the prosecution. Both defense counsels argued for exclusion, or in the alternative, a continuance. The trial court instructed the attorneys to talk to the witness to see if the matter could be resolved. The matter could not be resolved, and the court was faced with having to either exclude the critical evidence or continue the trial. The court was then advised by at least one defense counsel that a twenty-four hour continuance would not be sufficient.

In addition to jeopardizing other cases that were on the docket, as well as having a sworn jury out on recess for several days, the court decided that a mistrial was the best solution. Other judges may have handled the situation differently. But under the difficult circumstances, this trial judge did what she thought protected the interests of both parties. Her actions were reasonable, and the trial court did not abuse its discretion in finding manifest necessity and declaring a mistrial. The ancient protection against twice being

**654**

placed in jeopardy of a criminal prosecution is intended to protect the abuse of individuals from arbitrary power of the state. It was never intended to be a gratuity to criminal defendants when the judiciary, in good faith, blunders.

SCOTT, J., joins this dissenting opinion.