# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0003-MR

RONNIE DUVALL                                         APPELLANT

                ON APPEAL FROM HOPKINS CIRCUIT COURT
V.            HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
                     NO. 22-CR-00130

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Hopkins County jury convicted Ronnie Duvall of one count of rape in the first degree, one count of sodomy in the first degree, and one count of sodomy in the second degree. The Hopkins Circuit Court thereafter sentenced Duvall to a life of imprisonment. Duvall now appeals his convictions as a matter of right. *See* KY. CONST. § 110(b). Having reviewed the record, the applicable law, and the arguments of the parties, we affirm the Hopkins Circuit Court.

## I.     FACTS & BACKGROUND

Ronnie Duvall ("Duvall") and Brittany Duvall ("Brittany") are not married but share two biological children. Brittany lived with Duvall throughout 2020

and 2021. Brittany is also the mother to a minor daughter named J.D.[1] who has lived primarily with her grandparents since she was roughly two years old. J.D. would, however, routinely spend some weekends with Brittany and Duvall. J.D. was born in June 2009.

In March 2022, J.D. informed officers at the Madisonville Police Department that Duvall and Brittany had jointly subjected her to inappropriate sexual contact. J.D. had previously disclosed Duvall and Brittany's abuse to other authority figures, but had recanted her allegations because she feared that her siblings, Duvall and Brittany's biological children, would be placed into foster care. Eventually, however, Brittany and Duvall were each indicted and charged with various sex crimes arising from J.D.'s allegations. Brittany pled guilty to several charges, including incest, rape, and sodomy, but Duvall proceeded to trial. Prior to Duvall's trial, the Commonwealth elected to try Duvall on only three of the twenty-one counts he had initially been indicted on.

At the time of Duvall's September 2023 trial, J.D. was fourteen years old. At trial, she testified that Duvall and Brittany had subjected her to sexual contact for the first time when she was eleven years old. When asked how she remembered how old she was during this instance of abuse, J.D. testified that she knew she was eleven years old "because it was just after my birthday." She later confirmed that Duvall and Brittany had subjected her to sexual contact the day after her eleventh birthday. J.D. testified that the first time Duvall and

---

[1] We use this child's initials to protect her identity and privacy.

Brittany abused her, she was in their living room watching television. J.D. testified that Duvall and Brittany grabbed her thighs, and Brittany told her to go to the bedroom where the three of them ended up in bed. J.D. testified that, during this incident, Duvall inserted his penis into her vagina, and that "[she] was on top of him" while Brittany laid beside them. J.D. also testified that Duvall performed oral sex on her the same evening. She confirmed that Duvall put his mouth on her vagina.

J.D. also testified to another, separate instance of sexual contact involving Duvall that transpired later. J.D. testified that she was in a van with Duvall driving from his house to her house when Duvall stopped the car, pulled over, and asked her to perform oral sex on him. J.D. testified that she put her mouth on Duvall's penis. J.D. testified that she thought she was twelve years old during this incident.

At Duvall's trial, Brittany conversely testified that Duvall had never participated in sex acts with J.D. She testified she had "no knowledge" of Duvall having any sexual contact with J.D. Brittany did, however, admit that *she* had personally participated in sex acts with J.D. She specifically testified, "It was my idea to have sex with her. Yes. I did it myself."

Brittany's testimony at trial, absolving Duvall from any guilt, was inconsistent with some prior statements she had previously made to officers at the Madisonville Police Department. When confronted with those prior statements at trial, Brittany confirmed that she had previously told the police that she and Duvall had "threesomes" with J.D. and that those threesomes

3

could have happened eight to ten times. Brittany also affirmed that she had previously told police that it was Duvall and J.D. who had initiated the threesomes. Brittany explained the inconsistencies between her prior statements and her trial testimony by later testifying that, "I mean I told them over and over that I didn't do it. When they continued calling me a liar, I just told them what they wanted to hear."

Madisonville Police Department Detective Daniel Morck testified that he interviewed Duvall in March 2022 regarding J.D.'s allegations. The Commonwealth played that recorded interview for the jury. Throughout that interview, Duvall initially denied having sexual intercourse with J.D. but he eventually made incriminating statements claiming that he only had sexual intercourse with J.D. once at his house. Duvall told Det. Morck that it was Brittany and J.D.'s idea for him to have sex with J.D. When asked later how many times he had sex with J.D., Duvall replied, "Probably not even three or four times." Duvall also told Det. Morck that J.D. performed oral sex on him "maybe twice."

The jury convicted Duvall of one count of rape in the first degree, one count of sodomy in the first degree, and one count of sodomy in the second degree. The Hopkins Circuit Court thereafter sentenced Duvall to a life of imprisonment.

Further facts will be developed below as necessary.

4

## II.    ANALYSIS

On appeal, Duvall makes four arguments advocating for the reversal of his criminal convictions. First, Duvall asserts that the trial court improperly allowed the Commonwealth to introduce a recording of a phone call Duvall was alleged to have made from jail without first properly authenticating that recording. Second, Duvall argues that the trial court erred in denying his motion for a mistrial after the Commonwealth introduced evidence tending to prove that he was incarcerated while awaiting trial. Third, Duvall asserts that the trial court erred in denying his motion to instruct the jury on the lesser-included offenses of rape in the second degree and sodomy in the second degree. Fourth, and finally, Duvall argues that this Court should reverse his convictions on the basis of cumulative error. Because we are unpersuaded by each of Duvall's multiple arguments, this Court affirms the Hopkins Circuit Court.

**A. The trial court did not abuse its discretion in concluding that the Commonwealth had properly authenticated a recorded phone call Duvall was alleged to have made from jail.**

Duvall first argues that the trial court erred by admitting an improperly authenticated recording of a phone call he was alleged to have made while incarcerated. The Commonwealth counters that the recording in question *was* properly authenticated at trial and therefore rightfully admitted into evidence. We agree with the Commonwealth.

On the first day of Duvall's trial, Madisonville Police Department Detective Daniel Morck took the witness stand and testified that he had

5

personally reviewed recorded phone calls that Duvall had made from prison. The following exchange then transpired between the Commonwealth and Det. Morck:

**Commonwealth**: Do you know when the first call was made?

**Det. Morck**: March 2, 2022.

**Commonwealth**: Have you reviewed that call?

**Det. Morck**: Yes.

**Commonwealth**: Was it preserved?

**Det. Morck**: Yes.

The Commonwealth thereafter moved to play a portion of that recorded phone call for the jury, but Duvall promptly objected and argued that the Commonwealth had failed to lay the proper foundation for the recording's admission and that the Commonwealth had failed to properly authenticate the recording. The trial court overruled Duvall's objection and allowed the Commonwealth to play that recording for the jury.

In that recording, a man alleged by the Commonwealth to be Duvall can be heard giving a number of remorseful or regretful statements like:

- "I'm in suicide watch."

- "It's just fucking stupid shit."

- "Threw my life away."

- "I don't blame nobody but myself."

- "I'm just fucking stupid."

- "I know I won't be able to see [my children] ever, ever again."

6

- "I mean, it is what it is. I mean, it is just fucking stupid, stupid shit. And now I gotta pay."

On appeal, Duvall specifically argues that the admission of these allegedly improperly authenticated recorded statements was prejudicial to his defense because they constituted "evidence used by the Commonwealth to imply admission of guilt."

The proper "authentication or identification" of evidence is a "condition precedent to admissibility." KRE 901(a). The foundational requirement that evidence be authentic to be admissible "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* The proponent's burden of authentication under KRE 901(a) is not particularly onerous; the Rule requires only a "prima facie showing of authenticity." *Johnson v. Commonwealth*, 134 S.W.3d 563, 566 (Ky. 2004) (citing *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994)). "On appellate review, the trial court's finding of authentication is reviewed for abuse of discretion." *Id.* (citing *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997)). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Relevant here, KRE 901(b)(5)–(6) provide illustrative, non-exclusive methods of properly authenticating telephone conversations:

> (5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or

recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular place or business if:

> (A) In the case of a person, circumstances, including self-identification, show the person answering to be the one called; or

> (B) In the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the phone.

However, "[a]ll that is necessary in authenticating a phone call is that the proponent offer 'sufficient authentication to make a prima facie case that would allow the issue of identity to be decided by the jury.'" ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 7.10[1][c] (2024) (quoting *First State Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 41 (5th Cir. 1990)). Testimony from a witness with personal knowledge "that a matter is what it is claimed to be" may also be sufficient to authenticate evidence. KRE 901(b)(1).

Here, we cannot say that the trial court abused its discretion in admitting the audio recording in question because the trial court reasonably determined that Det. Morck's testimony was sufficient to authenticate that recording. Det. Morck testified that he personally reviewed Duvall's recorded phone conversations from jail, including one specific call that Duvall placed on March 2, 2022. Det. Morck thereafter testified that a recording of that call had been properly "preserved." While Det. Morck's testimony was undoubtedly not the *strongest* evidence of the recording's authenticity, we cannot say that the trial court abused its discretion in concluding that the Commonwealth had

8

made a "prima facie showing of authenticity." *Johnson*, 134 S.W.3d at 566. Det. Morck's purported personal knowledge of the recording and its contents was sufficient evidence of authentication. The trial court's decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

**B. The trial court's decision to admit evidence proving that Duvall had been incarcerated prior to trial did not necessitate a mistrial.**

Duvall next argues that the trial court erred when it overruled his motion for a mistrial after the Commonwealth elicited testimony from Brittany tending to prove that Duvall had been incarcerated while awaiting trial. Duvall more specifically asserts that the evidence of his pretrial detention "degraded [his] constitutional rights to have his guilt or innocence determined solely on the basis of the evidence at trial and not on grounds of continued custody."

The decision whether or not to grant a mistrial is one assigned to the sound discretion of the trial court. *Commonwealth v. Padgett*, 563 S.W.3d 639, 647 (Ky. 2018) (citing *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004)). The trial court's decision will not be disturbed absent an abuse of that discretion. *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009).

On the second day of Duvall's trial, the following exchange transpired during the Commonwealth's direct examination of Brittany:

> **Commonwealth**: By denying [Duvall's] involvement, are you attempting to ensure that at least one parent is out of custody to take care of these children?
>
> **Brittany**: Why would I? They're taken care of now.

> **Commonwealth**: Who's taking care of them?
>
> **Brittany**: His nephew.
> **Commonwealth**: Would it be your preference that one of their parents would be taking care of them?
>
> **Brittany**: At the moment, no.
>
> **Commonwealth**: No. Why not?
>
> **Brittany**: Because he's arrested and he's in jail. I mean, how would he take care of them being locked up? How would I take care of them being locked up?

At this moment, Duvall objected and moved for a mistrial on the basis that the jury had been exposed to evidence proving that he had been incarcerated while awaiting trial. The trial court overruled Duvall's motion for a mistrial, but offered to admonish the jury to disregard Brittany's testimony. Duvall, however, declined the trial court's offer of an admonition.

"A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) (citing *Skaggs v. Commonwealth*, 694 S.W.2d 672, 678 (Ky. 1985)), overruled on other grounds by *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010). "[T]he power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Cardine* 283 S.W.3d at 647 (quoting *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000)). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Padgett*, 563

S.W.3d at 646 (Ky. 2018) (quoting *Woodard*, 147 S.W.3d at 68). Indeed, where a simple admonition may be sufficient to cure the alleged defect in the eyes of the jury, a mistrial is inappropriate because no manifest necessity for such an extreme remedy exists. *Id.* at 647–48 (quoting *Sneed v. Burress*, 500 S.W.3d 791, 805 (Ky. 2016) (Venters, J., dissenting)); *Simpson v. Commonwealth*, 653 S.W.3d 855, 867 (Ky. 2022).

"A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). That presumption is only overcome in two situations: "(1) when an overwhelming probability exists that the jury is incapable of following the admonition and a strong likelihood exists that the impermissible evidence would be devastating to the defendant; or (2) when the question was not premised on a factual basis and was inflammatory or highly prejudicial." *Sherroan v. Commonwealth*, 142 S.W.3d 7, 17 (Ky. 2004) (internal quotation marks omitted) (quoting *Johnson*, 105 S.W.3d at 441).

This Court has before observed that, "admonitions have been successfully used both in this Commonwealth and in federal court to address improper testimony about a defendant's prior incarceration." *Hilton v. Commonwealth*, 539 S.W.3d 1, 16 (Ky. 2018) (citing *United States v. Aichele*, 941 F.2d 761, 765 (9th Cir. 1991)); *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005); *see also Kelly v. Commonwealth*, No. 2004-SC-000786-MR, 2006 WL 3386636 (Ky. Nov. 22, 2006) (holding that mistrial was not warranted where detective gave testimony indicating that Appellant was incarcerated prior

11

to trial). Accordingly, we see no reason why the trial court's offer here—to admonish the jury to wholly disregard this portion of Brittany's testimony—would not have sufficed to cure any alleged prejudice arising from that testimony. While Brittany's reference to Duvall's pretrial incarceration is undoubtedly implicated when assessing the fairness of his trial, any potential for prejudice occasioned by that brief remark was not so great as to produce an "overwhelming possibility" that the jury was incapable of following the trial court's curative admonition. *Sherroan*, at 142 S.W.3d at 17. The trial court did not abuse its discretion in declining to grant Duvall's motion for a mistrial; its decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

## C. The trial court did not err in denying Duvall's motions to instruct the jury on lesser-included offenses.

Duvall next argues that the trial court abused its discretion when it denied his motion to instruct the jury on the two lesser-included offenses of rape in the second degree and sodomy in the second degree. We disagree with Duvall's arguments, and affirm the Hopkins Circuit Court.

After the close of all evidence, Duvall requested that the trial court instruct the jury on the lesser-included offenses of rape in the second degree and sodomy in the second degree. Preliminarily, we observe that Duvall's oral motion properly preserved his arguments for our appellate review. *See* Kentucky Rules of Criminal Procedure ("RCr") 9.54(2). Before the trial court, Duvall specifically argued that there was sufficient evidence in the record from which the jury could conclude that he had raped or sodomized J.D. when she

12

was older than twelve years old, not younger than twelve years old—a distinction that implicates an element of rape and sodomy. Duvall now makes the same arguments on appeal.

"Trial courts have a duty to instruct the jury on the whole law of the case." *Daniel v. Commonwealth*, 607 S.W.3d 626, 644 (Ky. 2020) (citing RCr 9.54(1)). The trial court's duty to instruct extends to any "lesser-included offenses" that are supported by the evidence. *Sasser v. Commonwealth*, 485 S.W.3d 290, 296 (Ky. 2016). A "lesser-included offense" is one established by proof of "the same or less than all the facts required to establish the commission of the offense charged." *Id.* at 296–97 (quoting KRS 505.020(2)(a)). "Lesser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Taylor v. Commonwealth*, 671 S.W.3d 36, 41 (Ky. 2023) (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 211 (Ky. 1997)).

"A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom." *Downs v. Commonwealth*, 620 S.W.3d 604, 613 (Ky. 2020) (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)). Accordingly, when a trial court's decision to give a jury instruction is "based on its view of the evidence," this Court reviews the trial court's decision for an abuse of discretion. *Sutton v. Commonwealth*, 627 S.W.3d 836 (Ky. 2021) (citing *Exantus v. Commonwealth*, 612 S.W.3d 871, 888 (Ky. 2020)); *Downs,*

13

620 S.W.3d at 613. A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

"A person is guilty of rape in the second degree when . . . [b]eing eighteen (18) years old or more, he or she engages in sexual intercourse with another person less than fourteen (14) years old[.]" KRS 510.050(1)(a). However, "[a] person is guilty of rape in the first degree when . . . [h]e engages in sexual intercourse with another person who is incapable of consent because he . . . [i]s less than twelve (12) years old[.]" KRS 510.040(1)(b)(2). The obvious distinction between the two offenses is the age of the defendant's victim, *i.e.*, whether he or she was under or over the age of twelve at the time of the defendant's criminalized sexual intercourse. Because a defendant over the age of eighteen who commits the offense of rape in the first degree, victim under twelve, has also necessarily committed the offense of rape in the second degree, victim under fourteen, rape in the second degree can properly be regarded as a lesser-included offense of rape in the first degree.

The Commonwealth's sodomy statutes follow the same pattern; indeed, the only material distinction between the offenses of rape and sodomy is the physical act being criminalized, *i.e.*, "sexual intercourse" or "deviate sexual intercourse." "A person is guilty of sodomy in the first degree when . . . [h]e engages in deviate sexual intercourse with another person who is incapable of consent because he . . . [i]s less than twelve (12) years old." KRS 510.070(1)(b)(2). Similarly, "[a] person is guilty of sodomy in the second degree

14

when . . . [b]eing eighteen (18) years old or more, he or she engages in deviate sexual intercourse with another person less than fourteen (14) years old[.]" KRS 510.080(1)(a). Accordingly, sodomy in the second degree may be a lesser-included offense of sodomy in the first degree.

Duvall argues that the trial court should have instructed the jury on the lesser-included offenses of rape in the second degree and sodomy in the second degree because the jury could have believed that he raped and sodomized J.D. after her twelfth birthday. During trial, J.D. specifically testified that Duvall had inserted his penis into her vagina and placed his mouth on her vagina the day after her eleventh birthday. J.D. testified that she was born on June 26, 2009. J.D. therefore alleged that Duvall had raped and sodomized her on June 27, 2020. Detective Daniel Morck of the Madisonville Police Department also testified that J.D. was born on June 26, 2009. However, when confronted on cross-examination with his investigation "case report," Det. Morck confirmed that he had written in that report that the day after J.D.'s eleventh birthday was June 27, 2021. Logic would dictate that J.D. would have been twelve on June 27, 2021. Det. Morck explained that inconsistency in his case report by specifically testifying, "The day after her eleventh birthday. It says June 27, 2021. And it should be—if it was on her eleventh birthday, it should be June 27, 2020. She'd be twelve on 2021." Relying solely on this evidence, Duvall now asserts that Det. Morck's case report "raised doubts about the date of the offenses."

15

While the trial court has a duty to instruct the jury on the whole law of the case, that duty "does not mandate the trial court place before the jury speculative theories merely because the testimony includes some basis for the speculation." *Breazeale v. Commonwealth*, 600 S.W.3d 682, 691 (Ky. 2020) (quoting *Lackey v. Commonwealth*, 468 S.W.3d 348, 355 (Ky. 2015)). Here, the "doubts" that Duvall evokes on appeal are precisely the kind of "speculative theories" contemplated by our case law. The only evidence admitted at trial regarding *when* Duvall was alleged to have raped and sodomized J.D. was conclusive and otherwise uncontradicted. J.D. testified that Duvall inserted his penis into her vagina and placed his mouth on her vagina the day after her eleventh birthday. Duvall's attempt to impeach Det. Morck's credibility with a prior inconsistent statement memorialized in his case report is not the kind of competent evidence needed to convince the jury in this instance. Simply, there was no evidence adduced at trial from which a reasonable juror could have concluded beyond a reasonable doubt that J.D. was over the age of twelve when Duvall raped and sodomized her. Therefore, the trial court did not abuse its discretion in denying Duvall's motion to instruct the jury on the offenses of rape in the second degree and sodomy in the second degree.

### D. There was no "cumulative error" requiring reversal of Duvall's convictions.

Duvall finally argues that the doctrine of "cumulative error" necessitates a reversal of his convictions. Because Duvall has not convinced this Court that there were any errors throughout this trial, we disagree with his appellate arguments.

16

Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair. We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). "If the errors have not 'individually raised any real question of prejudice,' then cumulative error is not implicated." *Elery v. Commonwealth*, 368 S.W.3d 78, 100 (Ky. 2012) (quoting *Brown*, 313 S.W.3d at 631).

Because Duvall has not demonstrated that there were *any* errors throughout his trial, the doctrine of cumulative error is unavailable to him.

## III. CONCLUSION

For the foregoing reasons, this Court affirms the Hopkins Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Kentucky Attorney General

Kristin Leigh Conder
Assistant Attorney General