RENDERED: OCTOBER 20, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000620-MR

ANTHONY WAYNE CRUTCHER JR.                                APPELLANT


ON APPEAL FROM FAYETTE CIRCUIT COURT
V.           HONORABLE PAMELA GOODWINE, JUDGE
NO. 12-CR-01332-001


COMMONWEALTH OF KENTUCKY                                   APPELLEE


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING**

A Circuit Court jury convicted Anthony Wayne Crutcher of first-degree robbery and of being a first-degree persistent felony offender (PFO I). The jury recommended a sentence of 15 years' imprisonment for the robbery conviction, enhanced to 35 years for the PFO I conviction. Crutcher appeals as a matter of right, arguing the trial court violated his right to a public trial when it removed all spectators during the victim's testimony and when it denied Crutcher's motion to suppress a photo identification. Having reviewed the record and the arguments of the parties, we affirm the judgment of the trial court.

## I.     BACKGROUND.

Ricky Goldsmith testified that three men – later identified as Jamaur Yocum, Crutcher, and a man known only by the nickname "SD" - approached

him in an apartment breezeway and asked him to sell them marijuana. Goldsmith went into the apartment he shared with his girlfriend, got a "dime bag," and returned to the breezeway. Crutcher pulled out a handgun and pointed it at Goldsmith. Yocum and Crutcher went through Goldsmith's pockets, taking $100, the marijuana, and other items. Yocum then ran and Crutcher told Goldsmith to turn around and run.[1] Goldsmith did so and, when he was about two steps away, Crutcher shot him in the shoulder. Goldsmith then ran to a nearby apartment building, and a neighbor called the police and EMS. Emergency personnel transported Goldsmith to a hospital where he was treated for his wound and released. SD did not participate in the robbery.

In an interview with police that night, Goldsmith stated that someone named "Yocum," whom he had seen around the neighborhood, had participated in the robbery. Goldsmith could not identify either Crutcher or SD. Shortly thereafter, Goldsmith, who said he was too afraid to stay in town, moved to away.

Months later, another police officer, Kyle Toms, tracked down Goldsmith and asked him to come to the department to try to identify "Yocum." Officer Toms put together a six-picture photo lineup from which Goldsmith identified Yocum as one of the men who robbed him.

While talking to Officer Toms, Goldsmith stated that a relative told him that someone named "Little Anthony" had been the shooter. Officer Toms

---

[1] At trial, Yocum testified that he did not participate in the robbery but ran away as soon as Crutcher pulled out his gun.

found Crutcher's photo by using that nickname to search the department's database. Officer Toms then used the department's database to put together a photo lineup that included Crutcher's photo. Goldsmith picked Crutcher's photo from the lineup and identified him as the shooter.

Yocum and Crutcher were arrested and charged with the robbery. Yocum pled guilty, but Crutcher, who insisted that he was not present during the robbery, went to trial. After hearing testimony from Yocum, the two police officers, Goldsmith's emergency room physician, and Goldsmith, a jury convicted Crutcher of first-degree robbery and of being a PFO. We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW.

The issues raised by Crutcher have different standards of review, which we set forth as necessary when addressing those issues.

## III. ANALYSIS.

### A. Denial of Public Trial.

When the Commonwealth called Goldsmith as a witness, the trial court's bailiff and counsel approached the bench. The bailiff stated that an officer who was outside the courtroom advised him that Goldsmith was reluctant to testify because a person in the courtroom had threatened Goldsmith. The bailiff stated that he did not know who had allegedly made the threat and that he was reluctant to investigate Goldsmith's statement without some direction from the trial court. The Commonwealth's attorney stated that: someone had threatened Goldsmith and "his family," Goldsmith was "terrified," and "[they]

3

had a hard time getting him down here." The trial court then suggested clearing the courtroom while Goldsmith testified. The bailiff asked if people would be re-admitted after Goldsmith testified, and the trial court responded affirmatively. Crutcher's attorney stood silent while this conversation took place. The bailiff then cleared visitors from the courtroom and Goldsmith testified. Crutcher now argues that this violated his right to a public trial as guaranteed by the U.S. and Kentucky Constitutions. The Commonwealth argues that, by failing to object, Crutcher waived this argument for appeal and, in the alternative, that any error was not palpable. And we agree.

The Sixth Amendment to the United States Constitution guarantees all criminal defendants the ability to "enjoy the right to a speedy and public trial." A similar protection is included in Section 11 of the Kentucky Constitution, boldly declaring that "in all prosecutions by indictment or information, he [the accused] shall have a speedy public trial by an impartial jury of the vicinage." The right to public trial is, of course, primarily for the benefit of the accused, allowing the public to see that he is "fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1986). And we agree that public trials are foundational prerequisites to any American notion of due process of law, guaranteeing defendants a serious and fair tribunal, and disincentivizing courts of law from devolving into dystopian kangaroo courts. But we simply hold that this right may be waived through a defendant's failure to object.

4

In *Waller v. Georgia*, the United States Supreme Court articulated its four-part test for trial courts to administer when considering whether to close the courtroom *over a defendant's objection.* In other words, the Supreme Court held that if the courtroom is closed over the accused's objection, and the *Waller* test is not satisfied, the constitutionally enshrined right to public trial is violated. Under *Waller*, a court, when considering whether to close a trial or a portion of a trial to the public must consider three factors: (1) whether the party seeking to close the proceedings has "an overriding interest that is likely to be prejudiced;" (2) what the narrowest method of protecting that interest is; and (3) whether there are "reasonable alternatives to closing the proceedings." *Id.* at 48. Once the court makes the determination to close the proceedings or a portion of the proceedings, "it must make findings adequate to support the closure." *Id.*

In this case, the trial court clearly did not engage in a *Waller* colloquy and did not address the prerequisite factors before ordering the courtroom briefly closed for Goldsmith's testimony. But unlike *Waller*, Crutcher failed to object to the closure. *Waller* is noticeably silent about instances where the defendant fails to object to the closure at all.

Despite *Waller*'s silence, Crutcher argues that waiver is unavailable in this situation, but he fails to present any federal or state case law in support of that proposition. And he ignores the plain reading of the Sixth Circuit's opinion in *Johnson v. Sherry*, authority we find highly persuasive, holding that a defendant may waive his right to public trial absent any express objection or

5

compliance with the *Waller* test. 586 F.3d 439, 444 (6th Cir. 2009). In *Johnson*, not only did defense counsel fail to object, he actually *consented* to closing the courtroom. The panel-majority accordingly held that, "While we agree that the right to a public trial is an important structural right, it is also one that can be waived *when a defendant fails to object to the closure of the courtroom..." Id.* (emphasis added). Obviously, Crutcher's attorney did not consent to closure. But this difference in form does not undermine the substance behind the *Johnson* Court's central holding that a defendant may waive his right to public trial through failure to preserve the issue for review.

This position is not limited to a single panel of a federal appellate court. In fact, the United States Supreme Court has at least implicitly endorsed the *Johnson* proposition that, like most criminal trial rights under the Constitution, the right to public trial is subject to the defendant's waiver through failing to enter an objection. *See Peretz v. United States*, 501 U.S. 923, 926 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960), for the proposition that "failure to object to closing of [the] courtroom is waiver of [the] right to public trial" affirms its general conclusion that "the most basic rights of criminal defendants are similarly subject to waiver").

Crutcher's understanding of waiver not only misreads *Johnson*, but it also undermines the Supreme Court's holding in *Waller*. If we are to accept his view that this right cannot be waived absent a knowing, voluntary, and intelligent waiver personally executed by the defendant, the *Waller* test itself may be unconstitutional. Assuming this right belongs in the company of others

6

that require express waiver—right to counsel, *Miranda* warnings, etc.—the trial court is powerless to close the courtroom under any circumstances, *particularly* over a defendant's objection. Unless Crutcher also contends that the express-waiver characterization is also the improper measurement for public-trial rights, his understanding of the Sixth Amendment would preclude any type of deprivation of the right, without regard to whether the defendant chooses to object to the closure or not.

Other state appellate courts have already held that if the public-trial right were among those requiring personal waiver, "then a judge would be unable to close the courtroom over the defendant's objection despite satisfying the *Waller* test." *Stackhouse v. People*, __ P.3d __, 2015 WL 3946868 *5 (Colo. June 29, 2015), *cert denied by Stackhouse v. Colorado*, 136 S.Ct. 1513 (2016). *See also Robinson v. State*, 976 A.2d 1072, 1082 n. 6 (Md. 2009) (for the proposition that if "the right to public trial cannot be waived by the defendant's 'inaction'" then a "defendant's refusal to make an 'intelligent and knowing' waiver of the right would preclude a trial judge from ever closing a courtroom, no matter the circumstances warranting closure.").

We understand that denial of a defendant's right to a public trial is considered a structural error. *See McCleery v. Commonwealth*, 410 S.W.3d 597, 604 (Ky. 2013). Structural errors, to be sure, undermine the overall integrity of the proceeding, and such mistakes warrant automatic reversal. *Id.* But the Sixth Circuit recognized that while *denial* of a defendant's right to public trial is quite clearly structural and worthy of automatic reversal, that

7

standard has no bearing on whether that right may be waived, either through agreeing to the closure or by failing to raise an objection in the record. The structural-error analysis is only relevant once a defendant's right is denied; there is no denial of right when the defendant is complicit in its abrogation.

In effect, Crutcher's characterization of this right subtly undermines the validity of *Waller* in Kentucky law. The only way we can imagine reconciling this position with Kentucky law is essentially to declare that, in Kentucky, an accused's right to public trial is more robust than its federal counterpart. And that is something we are free to decide as a matter of state constitutional law, if we can conclude that our constitution includes a more expansive liberty than the baseline the Sixth Amendment requires. We are often receptive and interested in such arguments, but one was not presented to us today.

As the matter stands today, we see no reason for this issue to depart from our time-honored paradigm requiring parties who feel aggrieved by some action taken at the trial court to expend the minimal energy required to preserve that issue in the record. Excluding spectators from the courtroom is not an action of judicial legerdemain that can catch even an attentive attorney off balance. Rather, it is unmistakable; any attorney not asleep in his chair would understand the change in scenery and face the conscious decision of whether to state an objection to the trial court's decision. Defense counsel obviously chose not to object here, and we see no reason why it is our duty to do his job for him.

8

There is understandably extreme caution when it comes to waiving constitutional rights, and we express no hostility toward those rights already requiring express waiver. But there is nothing in today's case, in light of federal Sixth Amendment precedent, suggesting a defendant's right to public trial may not be waived by failure to object.

## B. Out-of-Court Identification.

Sometime before Goldsmith met with Officer Toms, a relative told Goldsmith that the rumor circulating through the neighborhood was that a man identified as "Little Anthony" was the shooter. The relative then showed Goldsmith a photo of the man known as "Little Anthony." When he saw the photo, Goldsmith stated that Little Anthony was the man who shot him. Goldsmith then told Officer Toms that he believed a man known as Little Anthony had shot him. Officer Toms searched the police department's database using the nickname Little Anthony and discovered only one match – Crutcher. Officer Toms then took Crutcher's photo from that database and put it with five other photos that he believed were similar. When Officer Toms showed the photos to Goldsmith, he picked out Crutcher's photo and stated that Crutcher was the man who shot him. Crutcher moved to suppress this identification.

In his motion, Crutcher argued that the photo lineup was impermissibly suggestive, noting that Goldsmith had initially described the man who shot him as being a light skinned African American with dreadlocks. Crutcher agreed that all of the men in the photo lineup were African Americans with

dreadlocks. However, he argued the lineup was skewed because he had the lightest skin tone. Following a hearing, the trial court noted that it can be difficult to define skin tone with precision and what one person might describe as light skin tone another might describe as dark skin tone. Putting aside the issue of skin tone, the court found that all of the men had dreadlocks and relatively similar facial features and that all of the photos were taken against the same background. Based on those findings, the court determined that the photo lineup was not impermissibly suggestive, and it denied Crutcher's motion. On appeal, Crutcher raises the same arguments as he did before the trial court.

We review a trial court's ruling on a motion to suppress an out-of-court identification, as we do a ruling regarding the admissibility of any evidence, for an abuse of discretion. *King v. Commonwealth*, 142 S.W.3d 645, 649 (Ky. 2004). A court abuses its discretion when its "decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999).

When a defendant questions the validity of an out-of-court identification, the trial court must first determine if that identification was unduly or impermissibly suggestive. *Grady v. Commonwealth*, 325 S.W.3d 333, 353 (Ky. 2010). If it was not, then the analysis stops. *Id.* Minor differences in photos are not sufficient to establish that a photo lineup was unduly or impermissibly suggestive. As we stated in *Jacobsen v. Commonwealth*, 376 S.W.3d 600, 607 (Ky. 2012), *as corrected* (Sept. 11, 2012):

10

It is inevitable, after all, that separate photos of different individuals will all be unique in one way or another. What matters is not that a suspect's photo is different from the others, but that the differences are such as to suggest police suspicion or culpability, such as stark irregularities suggesting that the other pictures were selected together as controls, whereas the odd picture is apt to be the suspect, or differences that mark the suspect's photo as singularly like the witness's description of the perpetrator.

(Internal citation omitted).

Here, the only difference Crutcher can point to is skin tone. As the trial court noted, the description "light skinned African American" is subjective. After reviewing the photos, the court determined that any variation in skin tone among the photos was not unnecessarily suggestive. Having reviewed the record, we cannot say that the court abused its discretion in making this determination. Therefore, we discern no error in the court's denial of Crutcher's motion.

## IV.   CONCLUSION.

For the foregoing reasons, we affirm the trial court's judgment below on both issues.

All sitting. Minton, C.J., Cunningham, Hughes and Noble, JJ., concur. Venters, J., concurs by separate opinion in which Keller, and Wright, JJ., join.

VENTERS, J., CONCURS:   I fully concur with the Majority opinion including the conclusion that Crutcher is entitled to no relief with respect to his belated discovery that the right to a public trial was somewhat abridged. I

11

also agree that this is not the case to parse the difference between the public trial right protected by the Sixth Amendment of the United States Constitution and the corresponding right set forth in Section 11 of the Kentucky Constitution, but I write separately to highlight an important but subtle difference between the two.

Section 11 may not be "more robust than its federal counterpart," but it is different in a way that is worth noting. I suggest that under the Kentucky Constitution, the right to a public trial belongs to the people, the general citizenry; it does not belong exclusively to the defendant, and so the right to a public trial is not his to waive. A criminal defendant cannot waive the right to a public trial, although he may waive his right to complain on appeal about the denial of a public trial.

The Sixth Amendment provides in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." That language presents a clear manifestation of a right that is the defendant's to enjoy. In contrast, Section 11 of the Kentucky Constitution provides that "in all prosecutions . . . [the accused] shall have a speedy public trial." I take that language to mean the trial shall be public whether the defendant wants it that way or not. Section 11 makes it imperative that criminal trials are to be open to the public. It creates a right that belongs to the people, anyone of the general citizenry, to assure that no criminal adjudications take place behind closed doors regardless of the defendant's preference on the subject.

12

I do not diminish the usual interest of the accused to have a public trial. But in my view, the greater menace averted by Section 11 is the secret disposition of criminal cases without the public's knowledge. Section 11 protects the greater good of assuring that the public business of administering justice is done in the open for all to see. To that extent, I submit that Crutcher had no ability to waive the right to a public trial, but he certainly could, and he certainly did waive his right to complain about it.

Keller, and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Assistant Attorney General