# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS
OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR
CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN
UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A
COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG
WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO
THE  ACTION.

RENDERED:  JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0384-MR

EDWIN KNOX                                           APPELLANT

V.                  ON APPEAL FROM HICKMAN CIRCUIT COURT
HONORABLE TIMOTHY A. LANGFORD, JUDGE
NO. 18-CR-00020

COMMONWEALTH OF KENTUCKY                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART AND REVERSING IN PART</u>**

Edwin Knox appeals from his convictions by the Hickman Circuit Court after a jury trial on first-degree rape, first-degree sodomy, first-degree unlawful transaction with a minor under sixteen (UTM), and two counts of first-degree sexual abuse of a minor under sixteen, resulting in a total sentence of thirty years. On appeal, Knox argues the trial court committed palpable error by utilizing deficient jury instructions which allowed for double jeopardy violations, impermissible bolstering testimony, and cumulative error. We agree that double jeopardy violations occurred in Knox's trial.

The jury instructions in Knox's trial were deficient in failing to identify which particular act aligned with each charged count and failing to identify, or recognize, lesser included offenses in the instructions. The risk of double jeopardy errors inherent in the instructions is obvious and otherwise palpable.

Under the circumstance of this case, we have determined that Knox's convictions for UTM and sexual abuse must be reversed. However, the rape and sodomy convictions and their concurrent twenty year sentences remain valid and we affirm them.

## I. FACTUAL AND LEGAL BACKGROUND

The mother in this matter (Mother)[1] has four daughters. Three of these daughters. Kelli, Kimberly, and Janice,[2] would later make allegations against Knox. Kelli and Kimberly are the oldest of the girls and are twins. The twins were twelve years old but "almost thirteen," in April 2017, when Mother moved her family into Knox's residence. Mother had met Knox when he was working as a physical therapist treating Mother's sister. Knox is not related to any of the children.

In January 2018, Mother and her daughters moved out of Knox's residence after police responded to an altercation between Mother and Knox at

---

[1] The mother of these four children will only be referenced as "Mother" to avoid risk of identifying any of her four children.

[2] The victims in this case are all sisters and were each minors when these crimes allegedly occurred. Significant confusion arose during the prosecution of this action because the twin sisters shared the same initials. The trial court would eventually refer to the twins by adding both the second and third letters of each of their first names which lessened the confusion but made their first names clearly known. Repeating the use of those initials within this opinion would unnecessarily expose the minors' identities. We have therefore adopted pseudonyms for the sisters and refer to the twin who is the primary focus of this appeal as "Kelli" "Ke.B" and/or "Kel.B." and her twin sister as "Kimberly," "KiB," and/or "Kim.B" with their younger sister being "Janice" or "J.B."

In matters such as this where using the initials of child victims creates, or may cause confusion, we encourage courts to consider the use of pseudonyms like we have utilized here to distinguish twin girls with the same initials. In other matters using clear identifiers such as "Twelve-Year-Old Girl" or "Seven-Year-Old Boy," may be more appropriate.

the residence. According to Mother, after her family had left the residence Knox asked to see, or offered to watch, all four daughters but only Kelli wanted to visit him. Kelli however testified that her mother forced her, but none of her sisters, to visit Knox. The number of times Kelli visited Knox was uncertain.

Approximately six months after the family left Knox's residence, Kelli informed her grandmother and aunt that she had been sexually abused by Knox both when she was living with Knox and afterward during visits. Mother testified that she had no idea that Knox had committed any inappropriate acts with any of her children. At trial, Kimberly stated that she had never informed her mother about any abuse because she had been "taken advantage of" prior to living with Knox and had told her mother, but that her mother "did nothing." After Kelli came forward, Kimberly later informed authorities that she too had been violated once by Knox when the family was living with him. On one occasion Knox had tried to grab the inside of Kimberly's thigh, and then one of her breasts, before Kimberly pushed him away. Although she refused to testify at either of Knox's subsequent trials, their sister Janice made an allegation against Knox as well.

The confusing facts—there were three minor victims, two of the victims had the same initials and were twins, there were two different time periods during which crimes allegedly occurred, there were multiple and varying criminal acts alleged, and the alleged sexual acts could each be prosecuted under more than one criminal statute—led to an array of inconsistent charged offenses. This plagued the criminal action throughout Knox's prosecution.

3

The matter was investigated by the Kentucky State Police and a criminal complaint was filed on August 30, 2018, alleging there were two victims (not identified) of Knox's abuse. One victim (presumably Kelli) reported she was twelve years old when: (1) Knox forcibly pulled down her pants without her consent and "penetrated her vagina with the head of his penis"; (2) "she was told to put her mouth on the penis of the defendant"; and (3) "over four more incidents where the defendant touched her vagina and/or she was told to grab the defendant's penis for sexual gratification." The second victim (presumably Janice) reported that when she was eleven years old, she was awakened one night by Knox pulling at her legs and that he "put his hand under her pants but over her underwear." A uniform citation was generated and filed on September 4, 2018, with four charges: (1) Rape, first-degree; (2) Sodomy, first-degree; (3) Sexual Abuse, first-degree; and (4) Sexual Abuse, first-degree, victim under twelve years of age.

However, the Hickman County grand jury would return a *nine-count* indictment against Knox. The two victims in this indictment were now identified as "[K.B.]" (initials shared by Kelli and Kimberly) and "[J.B.]" The indictment incorporated the originally charged offenses of sodomy and rape but now there were four counts of sexual abuse regarding K.B., one count of sexual abuse regarding Janice, and two counts of UTM, one count each for K.B. and Janice.

4

At this juncture there were seven charged offenses relating to K.B. (presumably Kelli) and two regarding Janice. All counts stated that the covered time period was between the "1st day of September 2016 and the 31st day of May 2018" which covered both the period when the sisters lived with Knox and the subsequent period when only Kelli visited him.

On May 21, 2019, after two scheduled trials had been continued, the Commonwealth moved to convene a special grand jury stating that during recent preparations for trial, it was discovered that "a third victim, [K.B.] who is the twin sister of [K.B.]" had disclosed sexual abuse.

On July 23, 2019, the grand jury returned a "new" indictment which then identified the victims as "[J.B.]," and (using three initials now) "[Ke.B.]" and "[Ki.B.]" to distinguish the twins from one another.[3] Even though Kimberly had been added as a victim, this indictment again had *nine counts*. This indictment now charged Knox with rape, sodomy, UTM, and three counts of sexual abuse regarding Kelli (six charged offenses now instead of seven); one count of sexual abuse regarding Kimberly; and one count each of sexual abuse and UTM regarding Janice.

Problematically, both indictments only couched the offenses in terms of "sexual intercourse," "deviant sexual intercourse," "sexual contact" or "illegal sexual activity" without any description whatsoever of what Knox had

---

[3] The trial court would ultimately use four initials to identify each twin and we follow suit substituting "[Kel.B.]" for Kelli and "[Kim.B.]" for Kimberly where needed to more closely mirror the record.

5

specifically done to commit each offense during the nine-month period covered in the indictment. This lack of specificity would never be remedied.

Mother was also charged with human trafficking and endangering the welfare of a child. Both Knox and Mother were tried as co-defendants by a jury on January 24, 2020. Janice did not testify, and a directed verdict was granted regarding the two counts concerning her. The jury ultimately deadlocked, and a mistrial was declared.

Prior to the second trial, Mother pled guilty to two counts of wanton endangerment and testified in Knox's second trial which began on April 5, 2022. Immediately prior to the trial commencing, a conference was held in chambers and there was discussion about the as-yet to be completed jury instructions and the initials that would be used for the minor victims. The trial judge also recognized risks associated with the multiple charges and multiple victims and advised both counsel that there needed to be clarity in the final instructions stating:

> We just need to be sure they [the jury] understand who they are talking about and there may be some differentiation like in the green room, in the bathroom, in the dining room, I've forgotten the facts of the case in terms of where it happened, but whatever we can put so it's clear that the jury is making a decision on that particular charge.

That advice went unheeded by the Commonwealth and Knox's counsel.

At the conclusion of the evidence, the trial court granted a directed verdict on the two counts (UTM and sexual abuse) related to Janice because she refused to testify.

6

The jury was erroneously given instructions for UTM regarding Kimberly even though Knox had not been indicted for such. The jury acquitted Knox of sexual abuse (the actual indicted offense) regarding Kimberly but convicted him of UTM under the instruction given to them in error. Only after the trial did the parties recognize this error. Subsequently, the trial court "dismissed" that conviction.

With the charges regarding both Janice and Kimberly all being resolved in Knox's favor, we are able to focus on those convictions related to Kelli.

Regarding Kelli, the jury convicted Knox of: (1) rape in the first-degree (Kentucky Revised Statutes (KRS) 510.040); (2) sodomy in the first-degree (KRS 510.070); (3) UTM under the age of sixteen (KRS 530.064(2)(b)); (4) one count of sexual abuse in the first-degree of a minor under the age of sixteen (KRS 510.110(3)(c)(1)) for an act occurring while Kelli was residing with Knox; and (5) one count of sexual abuse in the first-degree of a minor under the age of sixteen (KRS 510.110(3)(c)(1)) for an act occurring while Kelli was visiting Knox after her family had left his residence.

The trial court sentenced Knox in accordance with the jury's recommendation to a total of thirty years in prison consisting of twenty-year concurrent sentences for each of the three Class B felony convictions (rape, sodomy, and UTM) and five-year consecutive sentences for the two Class D felony convictions for sexual abuse. Knox appeals to this Court as a matter of right.

7

## II. LEGAL ANALYSIS

Knox's arguments are: (1) a double jeopardy violation, couched in terms of "inconsistent findings of fact," occurred relative to his rape, sodomy and unlawful transaction with a minor convictions; (2) a double jeopardy violation occurred regarding his rape, sodomy and sexual abuse convictions; (3) another double jeopardy violation occurred because sexual abuse is a lesser included offense of unlawful transaction with a minor; (4) Mother impermissibly bolstered her daughters' testimony; and (5) cumulative error rendered the trial fundamentally unfair.

None of these alleged errors were preserved by a contemporaneous objection. Consequently, we may only afford relief to Knox upon satisfaction of the rigorous palpable error standard found in Kentucky Rules of Criminal Procedure (RCr) 10.26, which states: "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

As summarized in *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006):

> For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. A palpable error must involve prejudice more egregious than that occurring in reversible error[.] A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been different

8

without the error. If not, the error cannot be palpable.

(Internal citations and quotation marks omitted).

In *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023), a matter concerning unanimity errors, we most recently phrased our palpable error standard of review as follows:

> Only if, upon review, a court can conclude the error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process, will reversal be warranted. It should be so egregious that it jumps off the page . . . and cries out for relief.

(Internal citations and quotation marks omitted).

When presented with jury instructions lacking specificity, we have repeatedly held "it is now settled that a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009). If jury instructions do not include factual differentiation between the charges, this constitutes reversible error, even if the error is unpreserved. *Id. See also Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008); *Bell v. Commonwealth*, 245 S.W.3d 738, 744 (Ky. 2008) (overruled on other grounds by *Harp*, 266 S.W.3d at 813); and *Miller v. Commonwealth*, 77 S.W.3d 566 (Ky. 2002).

This case demonstrates circumstances where, even without objections being made at trial, otherwise potentially reversible errors rise to the level of palpable error.

9

## A. Were Knox's Convictions the Result of Palpable Double Jeopardy Errors Caused by the Jury Instructions? – Unpreserved.

We consider the first three issues raised by Knox together as they all ultimately relate to the language, and lack thereof, contained in the jury instructions and the risk of double jeopardy errors attendant thereto.

In *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002), we stated that regardless of whether such issues were viewed as:

> [O]nes of insufficient evidence, or double jeopardy, or denials of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense *and to differentiate* each count from the others, and the jury must be separately instructed on each charged offense.

(Emphasis added).

We have stated previously in a case presenting an unpreserved error regarding a unanimous jury, that courts must "plumb the depths of the proceeding" and "scrutinize the factual idiosyncrasies of the individual case," and that is what we are compelled to do here. *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). An analysis of the instructions in this case will reveal how failures to differentiate alleged acts from charged offenses will lead to double jeopardy violations and palpable error.

10

### 1.    Kelli's Testimony

Kelli testified to Knox committing the following acts: (1) while she was living with Knox he came into her room, lifted her blouse, and touched her breast; (2) once, when the rest of her family was attending a soccer game, he pulled her pants down and unsuccessfully attempted to put his penis into her vagina and told her she needed to "stretch it out;" (3) later on the same night he made her do "the 69" and perform oral sex on him; (4) prior to her family leaving Knox's residence, she also stated that one time he put a cream on her vagina which burned; (5) during her subsequent visits to Knox, she testified that he came into the bathroom while she was bathing and refused to leave after she asked him to do so; and (6) Knox had her give him oral sex an unknown number of times during these later visits to his home. There were no witnesses to any of these encounters and no physical evidence. The difficulty moving forward will be attempting to positively "match" each of these allegations to any of Knox's convictions.

### 2.  The Jury Instructions and Closing Arguments

The instructions tendered to the jury were as follows:

### a. Rape, First-Degree:

The instruction for rape in the first-degree (Instruction No. 8), stated:

> You, the Jury, will find the Defendant, Edwin A. Knox, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A.  That in this county on or **between the 1st day of April, 2017 and the 31st day of January, 2018**, and before the finding of the Indictment herein, the Defendant,

11

Edwin A. Knox, engaged in **sexual intercourse** with [Kel.B.];

AND

B. That the Defendant, Edwin A. Knox, did so by **forcible compulsion**.

(Emphasis added).

The date range of April 1, 2017, to January 21, 2018, covered only the period of time when Kelli was residing in Knox's home with her mother and sisters. The language in this instruction comports with KRS 510.040(1)(a) for the offense of rape in the first-degree of a victim aged twelve or older. Neither the term "sexual intercourse" nor "forcible compulsion" was defined within Instruction No. 8. All definitions were combined on one page preceding each criminal count in Instruction No. 5.

In conformity with KRS 510.010(8), the definition of sexual intercourse in Instruction No. 5 was given as:

Mean[ing] sexual intercourse in its ordinary sense and includes penetration of the sex organs of one person by any body part or a foreign object manipulated by another person. "Sexual intercourse" occurs upon any penetration, however slight; emission is not required. Sexual intercourse does not include penetration of the sex organ by any body part or a foreign object in the course of the performance of generally recognized health-care practices.

Instruction No. 5 also gave a definition of forcible compulsion in accord with KRS 510.010(2) as "[m]ean[ing] physical force or threat of physical force, express or implied, which places a person in fear of immediate death or physical injury to self or another person. Physical resistance on the part of the

12

person subjected to forcible compulsion is not necessary to meet this definition."

### b. Sodomy, First-Degree:

The instruction for sodomy in the first-degree stated:

> You, the Jury, will find the Defendant, Edwin A. Knox, guilty of First-Degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or **between the 1st day of April, 2017 and the 31st day of January, 2018**, and before the finding of the Indictment herein, the Defendant, Edwin A. Knox, engaged in **deviate sexual intercourse** with [Kel.B.];
>
> AND
>
> B. That the Defendant, Edwin A. Knox, did so by **forcible compulsion**.

(Emphasis added).

The only substantive difference in the rape and sodomy instructions was the addition of the term "deviate." Like the rape charge, neither deviate sexual intercourse nor forcible compulsion were defined within the stand-alone instruction. We know that the jury was, at least temporarily, confused by this instruction because it sent a note to the trial court during deliberations asking "What is sodomy[?]"

Deviate Sexual Intercourse was defined in Instruction No. 5 in accord with KRS 510.010(1) as:

> Mean[ing] any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by any body part or a foreign object manipulated by another person. "Deviate sexual intercourse"

13

does not include penetration of the anus by any body part or a foreign object in the course of the performance of generally recognized health-care practices[.]

### c. Unlawful Transaction with a Minor, First-Degree:

Unlawful transaction with a minor was set forth under Jury Instruction No. 12. Unlike the rape and sodomy instructions, this instruction gave a date range which incorporated not only the time period of Kelli's residence with Knox, but *also* the date range of her visits to him. The instruction read:

> You will find the Defendant, Edwin A. Knox, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or **between the 1st day of April, 2017 and the 31st day of May, 2018**, and before the finding of the Indictment herein, the Defendant, Edwin A. Knox, knowingly induced, assisted or caused the minor, [Kel.B.] to engage in **illegal sexual acts**;
>
> AND
>
> B. That the victim, [Kel.B.] was less than 16 years of age,
>
> AND
>
> C. That the Defendant, Edwin A. Knox, knew the minor, [Kel.B.] was less than 16 years of age.

(Emphasis added).

The definition of "illegal sexual activity" was given by the trial court separately in Instruction No. 5 as "[a]ny and **all consensual sexual contact with a minor under the age of Sixteen (16)**." (Emphasis added).

### d. Sexual Abuse, First-Degree:

The two Class D felony counts of sexual abuse in the first-degree (Instructions No. 10 and 11) were distinguished in the jury instructions by

language regarding when (either during Kelli's residency with Knox or during her visits to him) unlawful sexual contact allegedly occurred.

Instruction No. 10 stated:

> You, the Jury, will find the Defendant, Edwin A. Knox, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or **between the 1st day of April, 2017 and the 31st day of January, 2018**, before the finding of the Indictment herein, the Defendant, Edwin A. Knox, subjected [Kel.B.] to **sexual contact** (<u>while residing in the Defendant's home</u>);
>
> AND
>
> B. That at the time of such occurrence, [Kel.B.] was less than 16 years of age;
>
> AND
> That at the time of the occurrence of (sic) the Defendant, Edwin A. Knox, was 21 years of age or older.

(Emphasis added, both bolded and underlined).

Instruction No. 11 was identical except for giving the date range of "between the 21st day of January, 2018 and the 31st day of May, 2018" with the additional language of "(while [Kel.B.] was visiting the home)[.]"

Sexual contact was defined in Instruction No. 5 as "**any touching** of the sexual or other intimate parts of a person do (sic) for purpose of gratifying the sexual desire of either party." (Emphasis added). *See* KRS 510.010(7).

During its closing argument, the Commonwealth did not review Kelli's testimony regarding the criminal sexual acts she testified occurred. Instead, the Commonwealth focused on rebutting Knox's claim that he had a parental-like relationship with the girls, countering that he took these actions to groom

15

the girls. Therefore, there was not even an attempt to clarify which criminal sexual act matched up with each indicted offense.[4]

No attempt was made by the Commonwealth in its closing argument to clarify which criminal sexual act matched up to each of the charged offenses. The Commonwealth also did not state which of the acts Kelli testified to were the crimes for which Knox had been indicted.

### 3. Double Jeopardy

The Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, Section 13 of the Kentucky Constitution ensures no person shall "be twice put in jeopardy of his life or limb" for the same offense.

Unpreserved double jeopardy violations are subject in Kentucky to palpable error review, but we have long held convictions tainted by double jeopardy cannot stand. *Cardine v. Commonwealth*, 283 S.W.3d 641, 651 (Ky. 2009). A double jeopardy violation satisfies the palpable error rule because it necessarily requires a different result. *Id.* In other words, a conviction tainted by double jeopardy results in manifest injustice. *Id.*

---

[4] We note that the Commonwealth acting to clarify jury instructions in its closing argument cannot cure a properly preserved objection regarding instructional errors. *Harp v. Commonwealth*, 266 S.W.3d 813, 820 (Ky. 2008). However, such clarification could potentially help to render such an error harmless. *See generally Miller v. Commonwealth*, 283 S.W.3d 690, 695-96 (Ky. 2009) (quoting *Harp*, 266 S.W.3d at 818) (explaining that a failure to differentiate which act each jury instruction relates to can constitute palpable error if the Commonwealth has failed to meet its burden to establish that "no prejudice resulted from the error").

16

In conducting our double jeopardy review, we must look to see whether or not the jury did, or likely could have, convicted Knox of two separate criminal offenses based on one criminal act. For instance, did the jury determine that when Knox committed the singular act of attempting to put his penis into Kelli's vagina, that he was guilty of rape (prohibiting "sexual intercourse") *and* sexual abuse (prohibiting "sexual abuse") *and* unlawful transaction with a minor (prohibiting "illegal sexual activity")?

Further complicating our analysis further is the fact that there was a failure of the instructions to differentiate between the element of "forcible compulsion" required for both the rape and sodomy convictions,[5] which is *not* an element of the crimes of UTM as prosecuted here (criminalizing any otherwise consensual, albeit unlawful, sexual acts[6] with persons under the age of sixteen) or sexual abuse. Under the instructions given this jury for UTM and sexual abuse, *any sexual contact* was sufficient to convict Knox only because Kelli was under the age of sixteen.

---

[5] KRS 510.010(2):

 "Forcible compulsion" means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition.

[6] KRS 510.010 does not offer a definition for "illegal sexual activity" but we have determined that to complete the offense of unlawful transaction with a minor in the first-degree, the minor must consent to and actively participate in the activity. The term "consent" as used here, does not mean legal consent, but only means to willingly engage in the activity. *See Combs v. Commonwealth*, 198 S.W.3d 574, 578 (Ky. 2006), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020).

17

Knox points out the inconsistency of the jury making "inconsistent findings of fact" when determining Knox to be guilty of both "forcibly" raping and sodomizing Kelli but *also* engaging in other—or possibly the same—"consensual" sex acts with Kelli. It is important to note here that, assuming the jury followed the instructions as tendered, it decided that "forcible compulsion" existed regarding the rape and sodomy charges, but then curiously determined that such forcible compulsion did *not* occur regarding either the UTM charge ("all consensual contact") for which they convicted Knox, and was unnecessary (since it was not stated) for the two sexual abuse convictions ("any touching of the sexual or other intimate parts . . .").

Additionally, the instructions do not actually distinguish between UTM (a Class B felony) and sexual abuse (a Class D felony).[7] By not specifying which act Knox was being accused of, Knox was again susceptible of being convicted of both charges based on the exact same event including those actions for which the jury had already convicted Knox of rape or sodomy. Under sexual abuse, Knox could be found guilty of "sexual contact" with Kelli because she was under sixteen, while under UTM he could be found guilty of "illegal sex acts" which are statutorily defined as illegal only because she was under sixteen.

---

[7] We have previously discussed the "overlap" between Kentucky's UTM and sexual abuse statutes and stated that, "[t]he General Assembly has recognized that complexity by defining several sex offenses broadly and by allowing some degree of overlap among them. Where conduct implicates more than one offense, fitting the charge (if any) to the conduct is a matter of prosecutorial and grand jury discretion. *Hale v. Commonwealth*, 396 S.W.3d 841, 849 (Ky. 2013).

The fact that sexual abuse in the first-degree can be a lesser included offense to both rape in the first-degree[8] **and** sodomy in the first-degree[9] highlights the general similarities between the elements of the various sexual crimes and the Commonwealth's concomitant duty to distinguish between the specific facts it alleges prove *each* of the similar crimes charged.

The jury, as instructed, could not have known whether the UTM and sexual abuse instructions pertained to their own set of unique alleged facts and which act was matched up to each instruction, or were "alternative" or "additional" charges of rape and sodomy for which they could also convict Knox.

The instructions, couched in general terms of "sexual contact" without differentiating the specific act alleged for each count of UTM and sexual abuse from the "other" acts which the jury found to constitute rape and sodomy, permitted the jury to find Knox guilty *twice for the same act*, e.g., one act constituting rape and same act also constituting sexual abuse and/or UTM. *See Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky.1993). The instructions furthermore do not advise the jury that one singular act *cannot* be

---

[8] "If there is evidence that sexual intercourse did not occur, an instruction on First-Degree Sexual Abuse should be given as a lesser included offense." 1 William S. Cooper & Donald P. Cetrulo, *Kentucky Instructions to Juries, Criminal* § 4.22 (6th ed. 2016) (May 2016 supp.).

[9] "If there is evidence that forcible compulsion did not occur and the victim was less than sixteen years of age, instructions on Second-Degree Sodomy, Third-Degree Sodomy, Sexual Misconduct, Second-Degree Sexual Abuse and/or Third-Degree Sexual Abuse." *Id.* at § 4.34.

the basis for convicting Knox of multiple offenses.[10] For example, if the jury was convinced that Knox had penetrated Kelli, it could have convicted Knox of rape, UTM and sexual abuse based upon that one act. Also, based on the instructions given, *each* of the acts of sexual contact described by Kelli could have each constituted *both* sexual abuse and UTM.

The lack of specificity in the jury instructions also implicate unanimity errors. In *Hampton v. Commonwealth,* 666 S.W.2d 737, 740 (Ky. 1984), we determined that proof of the precise dates on which the offenses were committed is not required of a child sexual abuse victim where the evidence is "ample to separately identify the various offenses charged." *Id.* at 740. *See also Garrett v. Commonwealth,* 48 S.W.3d 6, 10 (Ky. 2001); *Stringer v. Commonwealth,* 956 S.W.2d 883, 886 (Ky. 1997). In each of those cases though, while the child victims may not have been able testify to a date or time frame with precision, they did testify to, and described, a distinct factual basis for *each* distinct charge so that the jury could determine, in each instance, whether each separately charged criminal offense had been committed. We do not have that here. Here there is a lack of "connectivity" in this case between the testimony, the jury instructions, and the resultant convictions. Regarding UTM, the instruction did not specify a particular sex act and *any* of the sex

_____

[10] Only in one context, sexual abuse, was a separate jury instruction (Instruction No. 4) given stating: "[t]he Court instructs the Jury that in order to convict the Defendant, Edwin A. Knox, of sexual abuse, all 12 jurors must agree that the Defendant committed the same act." Why this type of instruction was not given applicable to all counts is unknown. Its mention regarding *only* sexual abuse only adds to the confusion.

acts Kelli described could have formed the basis for the conviction. The instructions also did not differentiate any act from those for which Knox was convicted of sexual abuse. The phrase in the statute, "any. . . sexual contact," is explicitly broad enough to include any and all sexual contact alleged between Knox and Kelli. Further complicating this issue is the fact that the date range covered in the UTM instruction was not limited to either the acts committed when Kelli lived with Knox or the later period of time when she visited him but encompassed both.

With the broad date range found in the instruction and the number of sexual acts alleged coupled with the failure of this instruction to specify *which* of the alleged acts constituted the offense, this Court is left without any ability to determine whether or not the jurors all agreed that any one specific violation occurred. Some jurors may have determined Knox touched Kelli's vagina but not believed that Knox forced her to perform oral sex, while other jurors may have determined that Knox had her perform oral sex but did not touch her vagina. Even with these disagreements, under the instructions as they were given, the jurors could still have "unanimously" convicted Knox of UTM presenting clear unanimity errors which could have easily been avoided.

The trial court, the Commonwealth, and Knox's counsel could have ensured that the instructions comported with the proof presented during the guilt phase of the trial. Instead, significantly deficient instructions were given.

We have a situation here where it cannot be ignored that the jury instructions did not differentiate between the separate alleged offenses. The

21

jury instructions, like the indictments before, only reference the broad definitional terms found in their respective criminal statutes without even approximately specifying what Knox allegedly did for each criminal act. The Commonwealth did not attempt to remedy this omission during the presentation of its case against Knox or even within its closing argument. In the simplest terms, the instructions failed to distinguish what alleged criminal act "matched up" to any of the charged offenses creating significant uncertainty as to whether the jury convicted Knox of UTM and sexual abuse *in addition to* rape and sodomy based on the same act(s).

Finding errors within the instructions regarding the UTM and sexual abuse convictions does not however mean that Knox's convictions for rape or sodomy must also be reversed. This Court has repeatedly held "[t]he remedy for these types of double jeopardy violations is to vacate the conviction for the lesser offense." *Lloyd v. Commonwealth,* 324 S.W.3d 384, 391 n. 26 (Ky. 2010); *Brown v. Commonwealth,* 297 S.W.3d 557, 562–563 (Ky. 2009) ("Given that first-degree fleeing or evading police is a felony and that second-degree wanton endangerment is a misdemeanor, the remedy is to vacate the lesser offenses of wanton endangerment"); *Clark v. Commonwealth,* 267 S.W.3d 668, 678 (Ky. 2008) (When a person is improperly convicted of two or more offenses arising "out of a single course of conduct and not requiring proof of a fact which the other does not[,]" the double jeopardy violation is remedied "by maintaining the more severe conviction and vacating the lesser" conviction).

22

Standing by themselves, we see no risk of error affecting either the rape or sodomy convictions. For rape, the jury was only presented with one episode of potential "sexual intercourse" occurring during the time Kelli resided with Knox *and* there was only one charge (rape) which contained the term "sexual intercourse." Although the rape instruction does not state the specific act that Knox allegedly committed, or give an approximate date within the ten months covered, the date range that is stated covers only the months when Kelli lived in Knox's residence so we may confine our analysis to Knox's misconduct during that period. At trial, Kelli specifically testified that while she was living with Knox, and the rest of her family was attending a soccer game, he pulled her pants down and attempted to put his penis into her vagina unsuccessfully and told her she needed to "stretch it out." The totality of the evidence presented at trial was sufficient to find Knox guilty of rape. His act of putting his penis into her vagina resulting in "any penetration, however slight[,]" supported the jury's conclusion. KRS 510.010(8). Most importantly for this analysis, this was the **only** instance of Kelli testifying to an incident of "sexual intercourse" as defined in the instructions and the only time he tried to put his penis inside her. We can therefore discern no risk that the jury's determination here was faulty.

The same is true regarding Knox's conviction for sodomy. The jury instruction here set the same time period for when Kelli resided with Knox and was otherwise identical to the rape instruction except for stating that Knox "engaged in deviate sexual intercourse with [Kelli]." Kelli testified that later the

23

same night that Knox attempted to penetrate her, he made her do "the 69" and perform oral sex on him. Such act would constitute deviate sexual intercourse as "any act of sexual gratification involving the sex organs of one person . . . and the mouth of another . . . ." KRS 510.010(1). That incident was the only one that Kelli testified to regarding her mouth or Knox's mouth ever contacting the other's genitals while she resided with him.

We affirm Knox's convictions and sentences for rape and sodomy and vacate his convictions for the "lesser" offenses of unlawful transaction with a minor and sexual abuse. Knox's total sentence of thirty years is reduced to twenty years with the reversal of his two sexual abuse convictions. For the sexual abuse convictions, Knox was sentenced to five years per conviction to run consecutively to his rape, sodomy and UTM convictions. The reversal of Knox's UTM conviction does not affect Knox's total sentence because the twenty-year sentence for UTM was to be served concurrently with the twenty-year sentences for rape and sodomy.

**B. Did the Commonwealth Commit Palpable Error by Offering Bolstering Testimony from Mother? – Unpreserved.**

Knox also argues that it was palpable error for the trial court to permit the Commonwealth to ask Mother "[d]o you believe your children's allegations?" Mother answered, "Yes, I do."

"We have consistently recognized that such testimony is highly prejudicial and unfairly bolsters the credibility of the allege victim." *Chavies*, 374 S.W.3d 313, 322 (Ky. 2012). However, "[I]f upon consideration of the whole case this court does not believe there is a substantial possibility that the result

24

would have been any different, the irregularity will be held nonprejudicial." *Schoenbachler v. Commonwealth,* 95 S.W.3d 830, 836 (Ky. 2003) (internal citation omitted).

This one question and answer was quite limited compared to the testimony elicited from Mother by Knox's own counsel who revisited the topic to show the jury that Mother had previously denied believing abuse had occurred, contradicted any assertion that she'd walked in on, or in any way been aware of, Knox abusing any of the girls, and did not force Kelli to visit Knox. Although Mother's testimony vouching for her daughters' veracity was error, we are not persuaded that Mother's affirmative response significantly affected the ultimate conclusions reached by the jury and therefore such error was harmless and certainly not palpable.

## C. Did Cumulative Error Render the Trial Fundamentally Unfair?

For his last argument, Knox asserts that when considering the combined errors cumulatively, his trial was fundamentally unfair citing to *Brown v. Commonwealth,* 313 S.W.3d 577, 631 (Ky. 2010), for the proposition that "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair."

While there were certainly "multiple errors" identified within the jury instructions in this matter, we have corrected those matters within our analysis of the double jeopardy issues presented and our determination to reverse Knox's convictions for UTM and sexual abuse is sufficient and

25

additionally reversing Knox's convictions for rape and sodomy is not warranted here.

### III. CONCLUSION

The trial court committed palpable error by permitting significantly deficient instructions to be given to the jury. We vacate Knox's conviction for Unlawful Transaction with a Minor (UTM) and both convictions for Sexual Abuse.

We affirm Knox's convictions for Rape and Sodomy and remand this matter to the Hickman Circuit Court for entry of judgment consistent with this opinion.

All sitting. VanMeter, C.J.; Keller, Lambert, and Thompson, JJ., concur. Nickell, J., concurs in part and dissents in part by separate opinion in which Bisig, Conley, JJ., join.

NICKELL, J., CONCURRING IN PART, DISSENTING IN PART: I concur with majority opinion affirming Knox's convictions for first-degree rape and first-degree sodomy. However, I respectfully dissent from the reversal of Knox's convictions for first-degree unlawful transaction with a minor and two counts of first-degree sexual abuse. In my estimation, Knox has waived appellate review of the purported defects in the jury instructions by inviting the alleged errors. Therefore, I concur in part and dissent in part.

Generally, a reviewing court will not permit a party to seek relief from an invited error. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006)). The law

26

distinguishes "between forfeited errors, which are subject to plain error review, and waived errors, which are not[.]" *Id.* at 38; *see also Gasaway v. Commonwealth*, 671 S.W.3d 298, 313 (Ky. 2023). Invited errors constitute a waiver and are defined as "invitations that reflect the party's knowing relinquishment of a right[.]" *Quisenberry*, 336 S.W.3d at 38 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997)). In other words, "the defendant cannot well complain of being prejudiced by a situation that he or she has created." 24 C.J.S. *Criminal Procedure & Rights of Accused* § 2548 (2024).

The invited error doctrine applies to defective jury instructions. *Graves v. Commonwealth*, 384 S.W.3d 144, 152 (Ky. 2012) (holding defendant's affirmative agreement to a defective instruction constituted invited error). This Court has specifically refused to address an alleged unanimity error under the invited error doctrine where the defendant proposed a jury instruction "virtually identical to the one given by the trial court." *Rudd v. Commonwealth*, 584 S.W.3d 742, 746 (Ky. 2019). Similarly, a party's litigation conduct may operate as a waiver of double jeopardy protection. *See Couch v. Maricle*, 998 S.W.2d 469, 470 (Ky. 1999) ("[I]f the accused makes the motion for a mistrial, the accused is deemed to have waived his double jeopardy claim."). Importantly, the protection of the Double Jeopardy Clause, "which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Currier v. Virginia*, 585 U.S. 493, 502 (2018) (quoting *United States v. Scott*, 437 U.S. 82, 99 (1976)).

Prior to trial in the present matter, the trial court specifically mentioned the necessity for factual differentiation in the jury instructions and advised the parties that the instructions must be crafted "so it is clear that the jury is making a decision on that particular charge." Upon the denial of Knox's renewed motion for directed verdict, the trial court again emphasized the importance of factual differentiation in the instructions and remarked:

> [u]ntil we work through these jury instructions and I've heard your all's arguments with regard to how we are going to differentiate some of the charges, the Court has heard sufficient proof to find there is a factual question for the jury. . . . The motion for directed verdict is overruled at this point. However, you can renew it in regard to specific charges because we have 8 or 9 here . . . and I will be glad to rule on it at that time. The Court will take the motion under advisement for purposes of the record until we work through these jury instructions. Any objection if we work through the jury instructions off the record?

Neither party objected to discussing the content of the jury instructions off the record.[11] After the instructions were completed, the parties reviewed them on the record in the presence of the trial court and declined to offer any proposed revisions or otherwise voice any objections.

Thus, the present appeal does not involve the situation where the defendant's failure to object resulted from a lurking prejudicial error that escaped the notice of the parties and trial court. On the contrary, the trial court ensured sufficient factual differentiation remained a primary consideration when the instructions were crafted. Although the parties'

---

[11] Despite the parties' consent to discuss the jury instructions off the record, I would note that documentation of these conferences facilitates meaningful appellate review. *See Graves v. Commonwealth*, 384 S.W.3d at 152.

28

subsequent discussion on factual differentiation was unrecorded, the lack of any objection after this issue was raised twice by the trial court convinces me that Knox's litigation conduct was tantamount to affirmative assent to the instructions as written.

Moreover, prejudice cannot be presumed by a silent record. *Walker v. Commonwealth*, 476 S.W.2d 630, 631 (Ky. 1972). Indeed, it is the appellant's "duty to designate and file a record sufficient to enable the court to pass on the alleged errors." *Burberry v. Bridges*, 427 S.W.2d 583, 585 (Ky. 1968). To hold otherwise would contradict this Court's steadfast refusal to allow a defendant to inject reversible error into a proceeding by remaining idle in the face of unmistakable aggrievement. *See Crutcher v. Commonwealth*, 500 S.W.3d 811, 815 (Ky. 2016); *see also Merchant v. Ruhle*, 740 F.2d 86, 92 (1st Cir. 1984) ("To countenance a setting aside of the verdicts in this case would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy."). Under our precedents on invited error, Knox should not be heard to complain when the trial court passed specifically upon the issue of sufficient factual differentiation with Knox's input and without his objection.

In *Johnson v. Commonwealth*, 676 S.W.3d 405, 414-15 (Ky. 2023), we recently abandoned our minority position deeming this type of instructional error to be a structural error mandating reversal. Nevertheless, the task of crafting instructions on multiple charges remains "pregnant with possibilities for error[.]" *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460 (1978).

29

Recognizing this risk, the trial court adroitly brought the issue of sufficient factual differentiation to the attention of the parties. Knox had every opportunity to address this known issue, but he did not, and thus indicated his affirmative assent by conduct. Moreover, Knox should not be permitted to "hide the ball" by failing to make a record of the pertinent discussions. In my view, an appellate court should not encourage tactics which "allow a litigant to lead a trial court down a primrose path and later, on appeal, profit from the invited error." *United States v. Gates*, 709 F.3d 58, 63 (1st Cir. 2013). Therefore, I concur in part, dissent in part, and would affirm the judgment of the trial court in its entirety.

Bisig and Conley, JJ., join.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Rachel A. Wright
Assistant Solicitor General